J-S32037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRICK MORRIS | : | |
| | : | |
| Appellant | : | No. 3177 EDA 2017 |

Appeal from the Judgment of Sentence October 1, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002393-2014

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 30, 2019**

Derrick Morris (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of rape by forcible compulsion, unlawful contact with a minor, endangering the welfare of children, corruption of minors, and involuntary deviate sexual intercourse with a person less than 16 years of age (IDSI).[1] We affirm.

The trial court provided the following account of the evidence presented at Appellant's trial:

> The complaining witness [(Complainant)] testified that in 2007, she was eleven years old, living in [Appellant's] apartment with her mother and sister in Yeadon[,] Pennsylvania. She was in the sixth grade, and suffered a hip injury and was unable to walk, requiring her to stay at home, in [Appellant's] care. In addition to assisting her in moving about, he was also charged with applying "Icy Hot" balm to the injured area.

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 6318(a), 4304(a)(1), 6301(a)(ii), and 3123(a)(7).

She testified that on one particular morning, after [Appellant] placed her in the bathtub to soak, he stayed in the room with her. After taking her out of the tub he applied the "Icy Hot" to her hip, he then put his fingers into her vagina. [Appellant] then helped her into the bedroom, pinned her to the bed and forced his penis into her vagina. In addition to threatening harm to her mother and sister if she revealed what happened, [Appellant] also attempted to rationalize his actions and placated her by taking her out for a treat. She testified that this pattern persisted for the week that she was out of school and then on a consistent basis for the remainder of the year.

In December of 2007, the Complainant was sent to live with her grandmother in Virginia where she remained until the end of the school year. During this period, she had no further contact with [Appellant]. In June of 2008, [Appellant's] mother brought her back to Pennsylvania and took up residence in Chester, without [Appellant].

[Appellant] subsequently moved into the Chester apartment with Complainant's mother. [Appellant] resumed his pattern of sexual assaults, despite Complainant's attempts to resist him.

In February of 2010, Complainant, her mother and sister moved into a home on Levick Street, in Philadelphia, without [Appellant]. In September of 2010, when Complainant was fourteen years old and just beginning the ninth grade, [Appellant] moved in, again resuming the same pattern of sexual abuse. However, instead of assaulting her in the afternoon, as before, he would usually assault her in the morning, when no one else was in the house, delaying her arrival at school. These assaults consisted of both oral and vaginal sex. She testified that he assaulted her approximately forty times before moving out of the Levick Street property.

After being gone for approximately nine months, [Appellant] returned to Levick Street in January of 2012, after the Complainant turned sixteen. [Appellant] again resumed the same pattern of sexual assaults and threats until April of that year, when he married her mother. Approximately three months later, [Appellant] obtained a PFA order against the mother, forcing them from the Levick Street home, ending [Appellant's] sexual assaults, although he unsuccessfully attempted to maintain contact with Complainant. Finally, on January 29, 2013, at the urging of a

- 2 -

close friend, Complainant told her mother of [Appellant's] assaults and reported them to the police.

Trial Court Opinion, 9/21/18, at 3-5 (citations to notes of testimony omitted).

As a result of the Complainant's report, the Commonwealth filed a criminal complaint against Appellant on December 5, 2013. Appellant's case proceeded to trial and a jury convicted him of the above crimes on February 26, 2015.

On October 1, 2015, the trial court sentenced Appellant to an aggregate 20 to 40 years of imprisonment. Appellant filed timely post-sentence motions on October 8, 2015, which the trial court denied. Thereafter, Appellant filed this timely appeal.[2] Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents three issues for our review:

[1.] Did the lower court err in permitting the Commonwealth to introduce evidence of prior bad acts allegedly committed by Appellant on the complaining witness where those allegations unfairly prejudiced Appellant and were not necessary for the Commonwealth's case-in-chief?

[2.] Did the lower court err in constraining trial counsel's cross[-]examination of the Commonwealth's primary investigator on the reasons for the investigation lying dormant for close to a full year?

[3.] Did the lower court abuse its discretion in imposing three years of incarceration beyond the aggravated range of the

---

[2] On November 16, 2015, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. The trial court appointed counsel, who filed an amended PCRA petition on August 21, 2017 seeking reinstatement of Appellant's direct appeal rights. The trial court reinstated Appellant's appellate rights on August 24, 2017, and he filed his timely notice of appeal on September 22, 2017.

sentencing guidelines with no more than boilerplate references to the seriousness of the crimes for which Appellant was sentenced?

Appellant's Brief at 4.

In his first issue, Appellant argues that the trial court erred in permitting the Commonwealth to introduce evidence of alleged prior uncharged sexual abuse committed against the Complainant outside of Philadelphia County. Appellant asserts that the admission of such evidence "was unnecessary to the Commonwealth's case against [him] and unfairly prejudic[al]." Appellant's Brief at 14.

> Our standard of review is as follows:
>
> It is well settled that the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Hicks*, 151 A.3d 216, 224 (Pa. Super. 2016) (citations omitted).

As our Supreme Court has explained, generally, "all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility." *Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007). An exception to this rule is that "[e]vidence of a crime, wrong, or other act is not

admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Evidence of an uncharged crime, however, may be admissible for a purpose other than to show criminal propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "This list is not exhaustive[,]" as the Supreme Court of Pennsylvania has recognized that one permissible purpose of such evidence is "to furnish the context or complete story of the events surrounding a crime[,]" *i.e.*, the *res gestae* exception. **Dillon**, 925 A.2d at 137.

The *res gestae* exception is applicable in "situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development." **Commonwealth v. Knoble**, 188 A.3d 1199, 1205 (Pa. Super. 2018) (citation omitted). "In other words, the exception applies to prior bad acts which are so clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible." **Id.** (citation omitted).

However, even where an exception to Rule 404(b)'s prohibition against evidence of prior bad acts applies, the evidence of other crimes is admissible "only if the probative value of the evidence outweighs its potential for unfair

prejudice." Pa.R.E. 404(b)(2). "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 (comment).

Instantly, the Commonwealth filed on May 27, 2014 a notice of intent to present prior bad acts evidence pursuant to Pa.R.E. 404(b). Within its motion, the Commonwealth noted that it "intend[ed] to introduce evidence regarding [Appellant's] actions against the [C]omplainant while they were living in Yeadon and Chester, Pennsylvania, pursuant to Pa.R.E. [] 404(b)." Commonwealth's Pa.R.E. 404(b) Notice of Intent, 5/27/14, at 1-2.

Prior to the commencement of Appellant's jury trial, the Commonwealth moved for the admission of testimony under the "*res gestae*" exception to the prior bad acts rule, as well as evidence of Appellant's "common scheme, plan or design . . . in terms of how [Appellant began] sexually abusing [the Complainant]." N.T., 2/23/15, at 13-14. Defense counsel objected, stating that the "prejudice of it outweighs the probative value[.]" *Id.* at 14. Ultimately, with the instruction that the jury be made aware that Appellant could not be convicted based upon his alleged acts outside of Philadelphia County, the trial court permitted the Commonwealth to present the testimony. *Id.* at 15.

In defense of its decision to permit the prior bad acts evidence, the trial court explained:

> After hearing argument, the [c]ourt determined that because of the ongoing nature of the assaults, it was appropriate

for the jury to consider this evidence as facts which "form part of the history and natural development of the events and offenses with which [a] defendant is charged."

> Furthermore, it was clear that this testimony related to distinct and separable locations and periods of time, separate and apart from those occurring in Philadelphia County. In granting the Commonwealth's motion the [c]ourt added the proviso that, "as long as the [Commonwealth] makes it clear in [the] presentation and then in [the] points for charge, that he can't be found guilty based on what he did outside of Philadelphia, therefore, what he did outside of Philadelphia is being used to corroborate this course of conduct, I think the jury can distinguish that. I mean, it's not interwoven, it's a bright line."

Trial Court Opinion, 9/21/18, at 7-8 (citations to notes of testimony omitted).

In its charge of the jury,[3] the trial court instructed:

> The bill of information[] . . . alleges that the crime was committed on various dates sometime between September 2010 and August 2012.

> And as the [Commonwealth] explained to you a couple times, I think in [the] opening and closing, these are the dates for alleged actions in Philadelphia. Anything that happened outside of Philadelphia is not on trial in this case, it's not before me, it's not before you. . . .

> Evidence of other offenses were introduced for a specific purpose, not because [Appellant] is charged with or is on trial for those offenses, but because they sort of relate to this course of conduct. The allegation, the Commonwealth's theory, is that this started when she was 11, started someplace else, not Philadelphia, and then it sort of continued and made its way into Philadelphia on those dates that I told you are alleged in the indictment or information.

---

[3] "When the trial court admits evidence of a defendant's other bad acts, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose." *Commonwealth v. Crispell*, 193 A.3d 919, 937 (Pa. 2018).

- 7 -

So you heard evidence that, before the allegations in this case, [Appellant] had unlawful sexual contact with [C]omplainant, [] for which he is not on trial. That's the testimony to the effect that [Appellant] penetrated her vagina with his fingers, placed his penis inside her vagina, performed oral sex on her multiple occasions in Yeadon, as well as Chester. And then he threatened her with a gun if she told anyone about the abuse.

This evidence is before you for a limited purpose, that is, for the purpose of tending to show [Appellant's] intent, his motive, his state of mind, his common scheme, plan or design with regard to [Complainant]. This evidence must not be considered by you in any way other than for that purpose. You must not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T., 2/25/15, at 78, 79-80.

Upon review, we are not persuaded the trial court abused its discretion in allowing the Commonwealth to present prior bad acts evidence at Appellant's trial. As the trial court correctly notes, due to the ongoing nature of the assaults Appellant committed against the Complainant, evidence of the alleged prior assaults occurring outside of Philadelphia County were relevant for *res gestae* purposes to explain the history and course of events leading up to the events for which Appellant was tried. **See Commonwealth v. Hairston**, 84 A.3d 657 (Pa. 2014). Additionally, the testimony regarding Appellant's previous alleged assaults was relevant in demonstrating "an ongoing course of conduct, common scheme, plan or design by" Appellant in order to provide a contextual basis for the crimes alleged to have occurred in Philadelphia County. Trial Court Opinion, 9/21/18, at 7. Accordingly, we

conclude that both exceptions to Rule 404(b)'s prohibition against evidence of prior bad acts are applicable.

Further, the trial court's cautionary instructions to the jury, as reproduced above, ameliorated any undue prejudice caused by the introduction of the prior bad acts evidence. **See Commonwealth v. Sherwood**, 982 A.2d 483, 497 (Pa. 2009) ("[T]he trial court gave the jury cautionary instructions concerning the prior bad acts evidence; the court advised the jury of the limited purpose for which the evidence was introduced and that they could not consider the evidence as proof that [a]ppellant was a person of bad character or had criminal tendencies. We conclude that these instructions ameliorated any undue prejudice caused by the introduction of the prior bad acts.") (citations omitted).

"Jurors are presumed to follow the trial court's instructions[,]" **Hairston**, 84 A.3d at 666, and "[e]vidence will not be prohibited merely because it is harmful to the defendant." **Commonwealth v. Gad**, 190 A.3d 600, 605 (Pa. Super. 2018) (citation omitted). Instantly, the trial court's instruction at Appellant's trial "minimized the likelihood that the [other acts] evidence inflamed the jury or caused it to convict Appellant on an improper basis." **Hairston**, 84 A.3d at 666. Therefore, the trial court did not abuse its discretion in allowing the Commonwealth to present prior bad acts evidence.

In his second issue, Appellant argues that the trial court erred in limiting defense counsel's cross-examination of the Commonwealth's witness,

Philadelphia Police Officer Clare Duckworth. We note our relevant standard of review:

> A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. In addition, the trial court has broad discretion regarding both the scope and permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1087 (Pa. Super. 2016) (citations omitted).

Both the trial court and the Commonwealth aver that Appellant's second issue is waived for failure to contemporaneously object during trial. *See* Trial Court Opinion, 9/21/18, at 9; Commonwealth Brief at 14. We agree.

"The absence of a contemporaneous objection below constitutes a waiver of the claim on appeal." *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1145 (Pa. Super. 2017) (citing *Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008)). Our Supreme Court has stated:

> [I]t is axiomatic that issues are preserved when objections are made timely to the error or offense. *See Commonwealth v. May*, [] 887 A.2d 750, 761 ([Pa.] 2005) (holding that an "absence of contemporaneous objections renders" an appellant's claim waived); and *Commonwealth v. Bruce*, [] 916 A.2d 657, 671 ([Pa. Super.] 2007), *appeal denied,* [] 932 A.2d 74 ([Pa.] 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim). Therefore, we shall consider any issue waived where Appellant failed to assert a timely objection.

*Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008).

Similarly, this Court has stated:

> Our Pennsylvania Rules of Appellate Procedure and our case law provide the well-established requirements for preserving a claim for appellate review. It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "The absence of a contemporaneous objection below constitutes a waiver" of the claim on appeal. *Commonwealth v. Powell*, [] 956 A.2d 406, 423 ([Pa.] 2008); *Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa. Super. 2009) ("On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated.") (citation omitted)).

*Rodriguez*, 174 A.3d at 1144–45. We further note that where an appellant includes an issue in his Pa.R.A.P. 1925(b) statement, such inclusion does not "resurrect" a waived claim. *Id.* at 1145 n.6 (citing *Steiner v. Markel*, 968 A.2d 1253 (Pa. 2009)).

On direct examination of Officer Duckworth, the Commonwealth established that there was a delay in investigating the Complainant's allegations against Appellant because Officer Duckworth was off work for several months due to health-related issues. *See* N.T., 2/25/15, at 39-40. After the Commonwealth finished questioning Officer Duckworth, the following dialogue occurred during defense counsel's cross-examination:

> [Defense Counsel]: Now, between February and December of 2013, you're out of work; correct?
>
> [Officer Duckworth]: Not the entire time.
>
> [Defense Counsel]: Well, you were out of work for a time, and was this case reassigned to anybody else?
>
> [Officer Duckworth]: No.

[Defense Counsel]: And, so it just sat there, untouched, during that time?

[Commonwealth]: Objection.

[COURT]: Did anybody else do any investigation on the case besides you?

[Officer Duckworth]: When I came back, there was no other notes or anything in the file, so I would say no.

[COURT]: Okay.

[Defense Counsel]: Did — during the time you were out, did you pass off your cases to anyone else to fill in?

[Officer Duckworth]: That's not our call, that's the lieutenant of the Child Abuse Unit's call. We just can't pass off our cases to somebody else.

[Defense Counsel]: If this case had been some sort of emergency or priority, would it have been passed off to somebody else?

[COURT]: No.

[Commonwealth]: Objection.

[COURT]: Now you're just arguing with her. Do you have something else to ask her?

[Defense Counsel]: Just one question. Just to be clear, nothing was done between February of 2013 and December of 2013?

[Officer Duckworth]: That's not true.

[Commonwealth]: Objection. I'll withdraw that objection.

[COURT]: She already answered, nothing else was done.

[Defense Counsel]: What else was done?

[Officer Duckworth]: I prepared the affidavit and the arrest warrant.

[Defense Counsel]: That was December; correct?

[Officer Duckworth]: Right.

[Defense Counsel]: My question is, prior to that, and February of 2013, nothing was done?

[COURT]: Nothing in February —

[Defense Counsel]: That's a ten month period where no —

[COURT]: Are we going to go through all the months of 2013?

[Defense Counsel]: No. As long as we —

[Officer Duckworth]: This isn't my only case.

[Defense Counsel]: No, I understand. But during that ten — there's a ten-month period where no work is done on this case, for a number of reasons.

[Officer Duckworth]: I don't recall. You know, I don't see any other —

[COURT]: That doesn't make any difference. I told you to go someplace else with your questions. The — this case is not about how well or how poorly the police investigated the allegation, it's about whether the complainant is believable or not.

[Defense Counsel]: And I believe this is relevant to that.

[COURT]: Well, I can't figure out why.

[Defense Counsel]: I have no other questions anyway, so…

[COURT]: He's not charged with being a serial rapist, he's charged with molesting a child that he lived with. After the initial complaint, they weren't living together anymore, so how is it relevant?

[Defense Counsel]: Your Honor, I believe it's relevant because there's two statements taken, there's, at that point, a call to a district attorney who requires further investigation before an arrest warrant is taken out, then there's a ten-month period where

- 13 -

nobody's working on this case, which, I would say, is a statement that it wasn't taken as seriously as, perhaps, some other cases, and it wasn't considered any sort of priority.

[COURT]: So what. Maybe she's been working in the unit too long. Maybe by now she blows off all of these cases as being insignificant, she's waiting for them to put her into homicide where she can deal with real crime. I don't know what her attitude is and it doesn't make any difference.

*Id.* at 48-52.

As indicated above, Appellant challenges the trial court's decision to limit defense counsel's cross-examination of Officer Duckworth with respect to the time-frame between February and December of 2013. *See* Appellant's Brief at 20. To preserve the issue, Appellant was required to make a contemporaneous objection to the trial court's instruction "to go someplace else with your questions." N.T., 2/25/15, at 50. However, defense counsel failed to do so. Instead, counsel concluded his questioning of Officer Duckworth. *Id.* at 53 ("I have nothing else, Your Honor."). Thus, Appellant's issue is waived. *See Commonwealth v. Montalvo*, 956 A.2d 926, 936 (Pa. 2008) (recognizing "the general rule that, in order to preserve a claim on appeal, a party must lodge a timely objection at trial.") (citing, *inter alia,* *Commonwealth v. May*, 887 A.2d 750, 758 (Pa. 2005) ("To the extent the claims would sound in trial court error, they are waived due to the absence of contemporaneous objections."); Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In his third and final issue, Appellant challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary

aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Here, Appellant has complied with the first three prongs of the test by raising his discretionary sentencing claim in a timely post-sentence motion, filing a timely notice of appeal, and including in his brief a Rule 2119(f) concise statement. *See* Appellant's Brief at 12-13. Additionally, by asserting that the trial court erred in failing to provide adequate reasons on the record for imposing a sentence outside of the sentencing guidelines, Appellant has raised a substantial question. *See Commonwealth v. Holiday*, 954 A.2d 6, 10 (Pa. Super. 2008) ("A claim that the sentencing court imposed a sentence outside

of the guidelines without specifying sufficient reasons presents a substantial

question for our review.") (citation omitted). We thus review Appellant's

sentencing claim mindful of the following:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Cook*, 941 A.2d 7, 11-12 (Pa. Super. 2007) (citations

omitted).

We have previously stated:

> When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it [is] not bound by the Sentencing Guidelines. *Commonwealth v. Yuhasz*, [] 923 A.2d 1111, 1118 ([Pa.] 2007) ("It is well established that the Sentencing Guidelines are purely advisory in nature.")[.] . . . The court may deviate from the recommended guidelines; they are "merely one factor among many that the court must consider in imposing a sentence." [*Id.*] at 1118. A court may depart from the guidelines "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa. Super. 2001). When a court chooses to depart from the guidelines however, it must "demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines." [*Id.* at 206.] Further, the court must "provide a

- 16 -

contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S.A. § 9721(b).

When reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was reasonable. **Commonwealth v. Walls**, [] 926 A.2d 957, 962 ([Pa.] 2007). An appellate court must vacate and remand a case where it finds that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). In making a reasonableness determination, a court should consider four factors:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d). A sentence may be found unreasonable if it fails to properly account for these four statutory factors. A sentence may also be found unreasonable if the "sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing." **Walls**, 926 A.2d at 964. These general standards mandate that a sentencing court impose a sentence "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

**Commonwealth v. Sheller**, 961 A.2d 187, 190-91 (Pa. Super. 2008) (some citations omitted).

Furthermore:

The [sentencing] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b), however, the record as a whole must

- 17 -

reflect due consideration by the court of the statutory considerations at the time of sentencing. A sentencing court's indication that it has reviewed a pre[-]sentence report can satisfy the requirement of placing reasons for imposing sentence on the record. In addition, our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.

***Commonwealth v. Bullock***, 170 A.3d 1109, 1126 (Pa. Super. 2017) (citations omitted).

At the sentencing hearing in this case, the trial court specifically stated that it had reviewed Appellant's pre-sentence investigation report. N.T., 10/1/15, at 54. Prior to imposing sentence, the trial court stated:

> All right. I've listened to the arguments of counsel, I've reviewed the documents, the presentence report, the DA's memorandum. . . . In arriving at a sentence, one of the things I've looked at is that an aggravating factor is the length of time and the number of incidents. I mean, we have one count of rape, one count of [IDSI], but those counts represent a course of conduct. Likewise, with the corruption and the endangering the welfare charges, it's an aggravating factor that took place over a longer period of time, with many incidents contained within each count. All things considered, the DA's recommendation is not unreasonable, and my sentence is 20 to 40 years in a state correctional institution.

N.T., 10/1/15, at 54-55.

> In its opinion, the trial court expanded further:

> It was agreed by counsel, at [Appellant's] sentencing hearing on October 1, 2015, that [Appellant's] prior record score (PRS) was 1, resulting from a prior VUFA conviction and the offense gravity score (OGS) for the most serious conviction was 12. It was also agreed that the guidelines recommended a range of 54 to 72 months ± 12. As noted above, [Appellant] was sentenced to consecutive periods of confinement in a state correctional facility of 7 to 14 years on the charge of rape, 3 to 6

- 18 -

years on the charge of endangering the welfare of a child, 3 to 6 years on the charge of corruption of a minor and 7 to 14 years on the charge of IDSI, for an aggregate period of confinement of 20 to 40 years. Considering the serious ongoing nature of the offenses, it was proper to run [Appellant's] sentences consecutively.

It was clear from the record that the charges on which [Appellant] was convicted, related only to those acts which occurred in Philadelphia County, and do not adequately reflect his long history of continued abuse of Complainant, commencing when she was eleven years old. Additionally, at sentencing, [Appellant] displayed no sense of remorse nor did he take responsibility for his conduct; essentially accusing the witnesses of lying because they were angry with him for being forced to leave his home.

Prior to imposing sentence, [t]he [c]ourt noted for the record: "I've listened to the arguments of counsel, I've reviewed the documents, the presentence report, the DA's memorandum." In imposing sentence, the [c]ourt also noted: "In arriving at a sentence, one of the things I've looked at is that an aggravating factor is the length of time and the number of incidents."

In viewing the totality of the circumstances and his continued refusal to take responsibility for his actions, [Appellant] is a poor candidate for rehabilitation. [Appellant] was not entitled to reconsideration of his sentence.

Trial Court Opinion, 9/21/18, at 13-14 (citations to notes of testimony omitted).

Upon review of the record, including the above statements, we conclude that the trial court provided adequate reasoning when imposing Appellant's sentence. In addition to reviewing Appellant's pre-sentence investigation report, the trial court addressed Appellant's prior criminal record, the applicable Sentencing Guidelines, and as aggravating factors, the number of incidents underlying Appellant's convictions, as well as the large span of time

during which they occurred. N.T., 10/1/15, at 25, 26, 31, 54-55. Ultimately, and in its discretion, the trial court determined that Appellant's crimes necessitated an aggregate sentence of 20 to 40 years. As stated above, a sentencing court's indication that it has reviewed a pre-sentence investigation report satisfies the requirement of placing reasons for the imposition of a sentence on the record. *Bullock*, 170 A.3d at 1126. Such indication also leads to the presumption that the sentencing court is aware of all appropriate sentencing factors and circumstances. *Id.* As the trial court in this case stated that it had reviewed the pre-sentence investigation report, and additionally placed its reasons for Appellant's sentence on the record, we find no abuse of the court's sentencing discretion. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/30/19