J. A21042/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| THOMAS ADAMS, | : | No. 267 EDA 2020 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered August 14, 2019,
in the Court of Common Pleas of Bucks County
Criminal Division at No. CP-09-CR-0002150-2018

BEFORE: LAZARUS, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED NOVEMBER 16, 2020**

Thomas Adams appeals from the August 14, 2019 judgment of sentence entered in the Court of Common Pleas of Bucks County, after a bench trial, following his convictions for one count each of possession with intent to deliver, conspiracy to possess with intent to deliver, possession of firearm prohibited, and firearms not to be carried without a license.[1] Appellant was sentenced to 6-20 years' incarceration, and two concurrent terms of 10 years' probation. After careful review, we affirm.

The trial court summarized the relevant facts of this case, as gleaned from the suppression court hearing, as follows:

> On February 26, 2018, Officer Jason Hill of the
> Bensalem Township Police Department made contact

---

[1] 35 Pa.C.S.A. § 780-113(a)(30), and 18 Pa.C.S.A. §§ 903, 6105(a)(1), and 6106(a)(1), respectively.

with the co[-]defendant, Kevin Hoffner, via cellphone. Hoffner was to be the target of a reversal, which is where the undercover officer will present himself as a drug dealer selling a larger quantity of drugs. Officer Hill arranged to sell Hoffner one hundred 30-milligram pills of Oxycodone. Hoffner planned to purchase the pills, at a reduced rate of $12 per pill, for a total of $1,200, then resell the pills individually to make a profit. Officer Hill also determined that Hoffner planned to make the purchase with his brother, whom he planned to bring to the deal.

The deal was set to take place the following day, on February 27, 2018[,] at approximately 6:00 PM. Hoffner and his brother planned to meet Officer Hill at the Texas Roadhouse . . . . Prior to actually arriving on scene, Officer Hill arranged for surveillance units to be present and obtained one hundred placebo Oxycodone pills. Surveillance units set up around the restaurant parking lot as well as in the Kormon apartment complex adjoining the Texas Roadhouse.

At approximately 6:00 PM that evening, another phone call took place between Officer Hill and Hoffner. Hoffner told Officer Hill that he would be a little late, as he was driving to Croydon to pick up his brother. . . . Hoffner also indicated that they would be driving a BMW. Ten or 15 minutes later, [Officer Hill] saw a BMW pull into the apartment complex parking lot, drive around without its lights, and then about ten minutes later he saw what he believed to be the same BMW pull into the Texas Roadhouse.

Another phone call took place between Officer Hill and Hoffner . . . [and] Officer Hill testified that he could hear another male voice in the background while the two of them spoke. Once the BMW parked, Officer Hill and Hoffner walked to meet each other in the parking lot. Officer Hill directed Hoffner to count the money out. Hoffner counted out fifty-five twenty-dollar bills. Then Hoffner wanted to count the pills. Officer Hill began to walk with him back to his car [and he] noticed that [Hoffner] had at least one large knife on his person, in his pocket. [Hoffner] started to walk

[Officer Hill] out of line of sight of the surveillance team. So at that point [Officer Hill] started to think . . . . [that Hoffner] could be setting [him] up to rob [him]. As soon as Officer Hill came to this realization, he gave the takedown signal.

Once the takedown signal was given, the officers conducting surveillance moved in to apprehend both Hoffner and [a]ppellant. Officer Christopher Grayo . . . . observed [a]ppellant exit the car. Appellant was handcuffed at the car and taken into custody, where he was found to be in possession of a weapon, several knives, and a cell phone.

Back at . . . . headquarters, [a]ppellant was interviewed by Officers Brian Bielecki and Grayo . . . . Officer Bielecki gave [a]ppellant his *Miranda*[2] warnings and had [a]ppellant sign a waiver at 8:38 PM that evening. The *Miranda* form had been initialed and signed by [a]ppellant, indicating that he understood his rights. The officers did not promise anything to [a]ppellant for speaking with them, nor did they offer to cut him any breaks if he admitted to what he did. Appellant agreed to speak with the officers. In addition to the *Miranda* form, [a]ppellant also signed a consent form for the officers to review his cell phone at 8:41 PM on February 27, 2018.

The officers interrogated [a]ppellant for roughly 15-25 minutes. The interview was not audio or video recorded. Appellant admitted that he was partaking in this transaction by purchasing the Oxycodone pills, the hundred of them. He provided the $1,500, in which that he advised Mr. Hoffner was going to be middling for him and making approximately . . . $400 on that transaction. [Appellant] admitted . . . he was going to resell those pills for approximately $30 a pill once he obtained them . . .[ .] [Appellant] admitted that he knew he should not be possessing the firearm . . . . [because] he had a previous felony conviction.

---

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

> Approximately one year later, on February 1, 2019, Officer Bielecki obtained the search warrant for the phone. . . .

Trial court Rule 1925(a) opinion, 3/4/20 at 2-4 (citations to notes of testimony, exhibits, and quotation marks omitted; some brackets in original).

The parties incorporated the testimony from the suppression hearing into the bench trial. (*Id.* at 4.) It was stipulated that appellant's prior record precluded him from owning a firearm. (*Id.* at 4-5.) Appellant's text message exchange with Hoffner was admitted into evidence, and he was found guilty of the above-noted offenses.

Appellant was sentenced on August 14, 2019. He filed a timely post-sentence motion which was denied. On January 9, 2020, appellant filed a notice of appeal. The trial court issued an order directing appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. Thereafter, the trial court filed its Rule 1925(a) opinion.

Appellant raises the following issues on appeal:

> [1]. Did the [trial] court err in holding that appellant's arrest was supported by probable cause?
>
> [2]. Did the [trial] court err in finding that appellant's statements were knowingly, voluntarily, and intelligently made, as the consent was tainted by the illegal arrest?
>
> [3]. Did the [trial] court err in finding that appellant's consent to search his phone was

> knowingly, voluntarily, and intelligently made, as the consent was tainted by the illegal arrest?
>
> [4]. Did the [trial] court err in finding that the search warrant was valid and supported by probable cause, where the search warrant relied solely on stale information?

Appellant's brief at 4 (full capitalization omitted).

Appellant's first three issues stem from his contention that the trial court erred in denying his motion to suppress because his arrest was not supported by probable cause. (Appellant's brief at 13, 16, 17.) Appellant contends his illegal arrest tainted the waiver of his **Miranda** rights and his consent to search his cellphone, and therefore, his waiver and consent could not have been knowingly, voluntarily, and intelligently made. (**Id.** at 17, 18, 20, 21.)

Our standard of review for challenges to the denial of a suppression motion:

> is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the

> conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. McAdoo***, 46 A.3d 781, 783-784 (Pa.Super. 2012), ***appeal denied***, 65 A.3d 413 (Pa. 2013), quoting ***Commonwealth v. Hoppert***, 39 A.3d 358, 361-362 (Pa.Super. 2012) (citations omitted), ***appeal denied***, 57 A.3d 68 (Pa. 2012).

Appellant complains that because he was never identified as Hoffner's brother, and the officers did not observe appellant engage in criminal activity, his arrest was not supported by probable cause, and his statements to police and the messages from his cellphone should have been suppressed. (***See*** appellant's brief at 7, 8, 18, 20.)

In evaluating appellant's argument that he was unlawfully arrested, we take note of the following principles:

> To be lawful, an arrest must be supported by probable cause to believe that a crime has been committed by the person who is to be arrested. A police officer must make a common sense decision whether there is a fair probability that a crime was committed by the suspect. Whether probable cause exists is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training. [P]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [human beings] act.

***Commonwealth v. Wells***, 916 A.2d 1192, 1195 (Pa.Super. 2007) (citations and quotation marks omitted; brackets in original). "It is important to view ***all*** of the facts and the totality of the circumstances in order to avoid rendering

a decision that is totally devoid of [the] commonsensical inferences [that are] drawn by trained police officers with regard to drug activity." *Id.* (citation and quotation marks omitted; emphasis and brackets in original).

> [T]he inquiry must simply focus on whether the relevant facts and circumstances within the arresting officer's knowledge are sufficient to lead any person of reasonable caution to conclude that an offense has been or is being committed, based on a probability, and not a *prima facie* showing, of criminal activity.

*Commonwealth v. Martin*, 101 A.3d 706, 722 (Pa. 2014) (citations and quotation marks omitted).

We need not discern whether the officer's belief was more likely correct than incorrect. *See Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citation omitted). A probability of criminal activity, rather than a *prima facie* showing thereof, is sufficient. *Id.*, citation omitted. To answer the question of whether probable cause exists, we examine the totality of the circumstances. *Id. (*citation omitted).

Here, the record reflects that Officer Jason Hill is a police officer with 12 years' experience. (Notes of testimony, 7/9/19 at 7.) For approximately 5½ years, he served as a member of the Special Investigations Unit ("SIU"), which mainly investigates drug and vice crimes. (*Id.* at 8.) He has been involved in over 500 drug-related cases. Officer Hill set up a reversal, to sell 100 Oxycodone pills to Hoffner. (*Id.* at 9-11.) Hoffner told Officer Hill that he was purchasing the pills with his brother and that he was bringing his brother to the deal. (*Id.* at 11.)

Although the transaction was scheduled for 6:00 p.m., Hoffner called to say he would be late because he had to pick up his brother before he met with Officer Hill. (*Id.* at 12-13.) Shortly thereafter, Hoffner called and said he was arriving. (*Id.* at 17.) Officer Hill could hear Hoffner speaking to another male while he was on the phone. (*Id.*) Officer Hill met with Hoffner, who gave the officer $1,100. (*Id.* at 18-19.) Hoffner told Officer Hill that he wanted to make more money on the deal so he was ripping off his brother by having his brother believe that he was putting up more money than Officer Hill was asking for. (*Id.* at 19.) Subsequently, Officer Hill gave the takedown signal because he observed a large knife in Hoffner's pocket. (*Id.* at 19-20.)

Officer Christopher Grayo is a police officer with 13 years' experience, 4½ of those years with SIU. (*Id.* at 26.) He has participated in hundreds of controlled drug transactions. (*Id.* at 27.) Officer Grayo was informed that Hoffner would be arriving in a BMW with another person, whom Officer Grayo believed was Hoffner's brother or brother-in-law. (*Id.* at 29, 35.) When the BMW arrived, Officer Grayo observed Hoffner exit the driver's side of the vehicle, and [a]ppellant exit the passenger side and stand near the car. (*Id.* at 31.) When the takedown signal was given, Officer Grayo exited his vehicle and apprehended appellant. (*Id.* at 32.)

The suppression/trial court made extensive findings of fact[3] and concluded:

---

[3] *Id.* at 87-92.

> that the officers on [the] scene, in particular, Officer Hill, as a reasonable individual considering the totality of the circumstances and the information available to him, had probable cause to believe that [appellant] was involved either as a primary person or certainly as a co-conspirator in the drug transaction that had been set up that evening. And, therefore, at the time that [appellant] was taken into arrest [sic], the officers possessed probable cause to do so.

*Id.* at 92. Further, as noted in the trial court's Rule 1925(a) opinion:

> [Appellant] was not merely present for the reverse drug buy, but his co-defendant made officers aware ahead of the planned transaction that [a]ppellant would be present and a participant in the drug deal. Specifically, [a]ppellant's co-defendant claimed that [a]ppellant was putting up at least half of the money for the purchase. Appellant, along with his co-defendant, intended to resell the pills to make a substantial profit. . . . When officers arrested [appellant], he was either in or standing next to the co-defendant's car waiting for the transaction to be completed. Therefore, viewing the totality of the circumstances, the officers had probable cause to place [a]ppellant under arrest.

Trial court's Rule 1925(a) opinion, 3/4/20 at 8-9.

Viewing the Commonwealth's evidence, as well as the uncontradicted evidence when read in the context of the record as a whole, the record supports the trial court's finding that based upon the totality of the circumstances within Officer Hill's knowledge, a person of reasonable caution would conclude that criminal activity was probable. Under the collective knowledge doctrine, "probable cause assessment is not focused on a single officer's knowledge; rather, probable cause is assessed by aggregating the knowledge of two or more law enforcement officials working together."

***Commonwealth v. Yong***, 177 A.3d 876,882-883 (Pa. 2018). Thus, Officer Hill's probable cause gave Officer Grayo probable cause to arrest appellant. Therefore, because the record supports the trial court's factual findings and its legal conclusions drawn from those facts were correct, appellant's claim of lack of probable cause to support his arrest fails.

The sole reason given by appellant in support of his claims that the waiver of his ***Miranda*** rights and his consent to search his cellphone were not knowing, voluntary, and intelligently made is that his consent was tainted by his illegal arrest. (Appellant's brief at 4, 9, 10, 18, 20, 21.) However, "[a] fruit of the poisonous tree argument requires an antecedent illegality." ***Commonwealth v. Torres***, 177 A.3d 263, 276 (Pa.Super. 2017) (citation omitted), ***appeal denied***, 189 A.3d 375 (Pa. 2018). Here, no such antecedent illegality occurred. As explained, appellant was lawfully arrested. Therefore, his consent was not vitiated, and his subsequent post-***Miranda*** statements and his cellphone were not fruits of the "poisonous tree." Accordingly, appellant's second and third issues are without merit.

As his final issue, appellant claims that there was no probable cause to issue a search warrant for his cellphone because the information relied upon was stale. (Appellant's brief at 4, 23, 24.) However, appellant's motion to suppress did not raise staleness. (***See*** appellant's omnibus pretrial motion, 7/30/18.) This court has held that, "appellate review of [a ruling on] suppression is limited to examination of the precise basis under which

- 10 -

suppression initially was sought; no new theories of relief may be considered on appeal." ***Commonwealth v. Little***, 903 A.2d 1269, 1272-1273 (Pa.Super. 2006) (citation omitted); ***see also Commonwealth v. Thur***, 906 A.2d 552, 566 (Pa.Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression." (citation omitted)), ***appeal denied***, 946 A.2d 687 (Pa. 2008). Thus, appellant's claim is waived for appellate review purposes. ***See*** Pa.R.A.P. 302(a) (providing "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Nevertheless, even if we were to find that appellant did not waive his staleness issue, his claim would warrant no relief. It is well settled that the extraction of data from a cellphone constitutes a search that requires police to obtain a search warrant prior to extraction. ***Riley v. California***, 573 U.S. 373 (2014); ***Commonwealth v. Fulton***, 179 A.3d 475 (Pa. 2018).

> It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.
>
> [. . . .]

> [Further,] a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

***Commonwealth v. Green***, 204 A.3d 469, 480 (Pa.Super. 2019) (citations omitted; brackets in original).

"Pennsylvania law establishes that stale information cannot provide probable cause in support of a [search] warrant." ***Commonwealth v. Janda***, 14 A.3d 147, 158 (Pa.Super. 2011).

> [The a]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

***Commonwealth v. Hoppert***, 39 A.3d 358, 363 (Pa.Super. 2012), ***appeal denied***, 57 A.3d 68 (Pa. 2012) (citation omitted); ***see also Commonwealth v. Leed***, 186 A.3d 405, 413 (Pa. 2018).

> It is generally the case that police must speedily execute searches conducted pursuant to a warrant because the decision to issue a warrant must be based on facts which are closely related in time to the date the warrant is issued. However, our Supreme Court has recognized that there are times when the facts and circumstances presented to the magistrate[,] in support of the warrant[,] remain unchanged long after the warrant is issued. In instances where the facts and circumstances upon which the search warrant was

> based remain unchanged with the passing of time, probable cause still exists.

*Commonwealth v. Knoble*, 188 A.3d 1199, 1207 (Pa.Super. 2018) (citations, quotation marks, footnote, and brackets omitted), *appeal denied*, 198 A.3d 332 (Pa. 2018).

In *Knoble*, *supra*, police obtained a search warrant to extract data from Knoble's cellphone. The phone remained in police custody, and nine months later, a second extraction of data occurred. Our court found that a

> review of the record reveal[ed] that the facts and circumstances supporting the issuance of the [original] search warrant remained unchanged at the time of the second extraction. [The police] had legally seized [Knoble]'s cell phone from [her] residence with her consent. [The police] then secured the phone to ensure that it remained in its original condition and that no one could alter its contents. [Knoble]'s cell phone was in police custody during the entirety of the relevant period and remained unalterable. It [was], thus, evident that the facts and circumstances presented to the magistrate who issued the initial search warrant did not change. Accordingly, we conclude[d] that the [original] search warrant authorized the subsequent search and obviated the need for the Commonwealth to obtain another warrant.

*Knoble*, 188 A.3d at 1207 (footnote omitted).

We find the same logic applies to the instant case. Here, appellant signed a consent form for the officers to review his cell phone at 8:41 p.m. on February 27, 2018. (*See* notes of testimony, 7/9/19 at 64-67; Commonwealth Exhibit CS-3.) Appellant also gave the officers his cellphone number. (*See* affidavit of probable cause, 2/1/19 at 3.) "While going through

[appellant's] phone, [the officers] found multiple conversations containing drug talk and drug sales. The conversation between [appellant] and Hoffner also indicated drug sales as well." (***Id.***) The cellphone was then placed in a plastic bag and preserved in evidence at the Bensalem Township Police Department, where it remained until February 1, 2019, when the police applied for a search warrant. (Notes of testimony, 7/9/19 at 75-76.) The evidence pertaining to the reverse drug buy would have remained unchanged because the cell phone was untouched while in police custody and probable cause would not have dissipated.

Thus, even had appellant properly preserved his staleness issue, we find the issue to be without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/20