J-A28027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
              :               PENNSYLVANIA
              :
           v.              :
              :
              :
TAJAMEEK ROBERTS        :
              :
      Appellant      :    No. 1702 WDA 2019

Appeal from the Judgment of Sentence Entered May 8, 2019
In the Court of Common Pleas of Erie County Criminal Division
at No(s): CP-25-CR-0001739-2018

BEFORE: OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:         **FILED: MARCH 8, 2021**

Tajameek Roberts (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts of aggravated assault, as well as one count each of persons not to possess firearms, firearms not to be carried without a license, flight to avoid apprehension, recklessly endangering another person, resisting arrest, and disorderly conduct.[1]  We affirm.

On May 17, 2018, Patrolman William Goozdich (Goozdich) of the Erie Police Department was driving in his police cruiser on the 300 block of East 11th Street.  N.T., 3/18/19, at 23, 28.  Goozdich was familiar with Appellant, who had a warrant out for his arrest.  *Id.* at 29.  Goozdich saw Appellant and

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(3), 6105(a)(1), 6106(a)(1), 5126(a), 2705, 5104, and 5503(a)(4).

another man sitting on the front porch of a residence located at 335 East 11th Street (the house).[2] *Id.* at 23. After confirming the active warrant, Goozdich called for backup. *Id.* Goozdich parked his car and began to approach the house. *Id.* Appellant, upon seeing Goozdich, immediately "jumped up and ran" through the door of the house and closed it. *Id.* at 23; *see also id.* at 24 (stating that the other man remained seated). Goozdich testified that he did not observe Appellant in possession of any weapons or contraband at that time. *Id.* at 25.

At the same time as Goozdich's arrival, Officer Nicholas Bernatowicz (Bernatowicz) and his partner responded in a second patrol car, and parked on the rear side of the house, opposite Goozdich. *Id.* at 39; *see also id.* at 24. Bernatowicz and his partner exited their car and proceeded to the rear door of the house. *Id.* at 39-40. Bernatowicz explained that the two-level apartment house was comprised of two units, which were connected by a common stairwell. *Id.* Bernatowicz stated that as he "was approaching the rear of the door, [he] could see [Appellant] running down from the top stairs through the back stairway into the [house] with a gun in his hand." *Id.* at 40. Bernatowicz and his partner verbally announced their identity and ordered

---

[2] Appellant did not reside at the house.

Appellant to stop, which Appellant ignored. *Id.* at 41.[3] Bernatowicz stated that he was aware of the presence of minors in the house when Appellant ran into it. *Id.* The police then attempted to enter the house but discovered that the back door was locked; they gained entry by kicking in the door. *Id.* at 42. Bernatowicz stated that once inside, he noticed Appellant had shut himself inside one of the bedrooms. *Id.* at 43. Appellant ignored police commands to open the bedroom door. *Id.* The officers then tried to force the door open, but Appellant resisted. *Id.* at 44 (Bernatowicz stating that Appellant "decided to fight with us, pushed the door into us and got us into a physical scuffle where he actively resisted.").[4] The officers eventually gained entry, subdued Appellant, and placed him in handcuffs (while he was still located in the bedroom). *Id.* at 46; *see also id.* at 62 (Bernatowicz stating "it required us to completely fight with [Appellant] to take him into custody.").

After the police removed Appellant from the house, they discovered a handgun on the floor of the bedroom in which Appellant had barricaded himself. *Id.* at 51. Specifically, Bernatowicz testified that the "firearm was located in . . . that same bedroom that [Appellant] was in, just to the right

---

[3] Bernatowicz's partner, Patrolman Nicholas Strauch (Strauch), testified on the second day of trial, and his testimony about the incident was largely consistent with that of Bernatowicz. *See generally* N.T., 3/19/19, at 5-22. Unlike Bernatowicz, however, Strauch did not see Appellant in possession of a weapon. *Id.* at 22.

[4] Appellant's actions caused Bernatowicz to suffer bruising and minor blood loss. *Id.* at 45.

underneath a dresser where [Appellant] was standing." *Id.* Bernatowicz stated that the weapon, a .22 caliber semi-automatic pistol, appeared to be the same weapon that Bernatowicz saw Appellant in possession of while running down the stairwell. *Id.*

Maritza Holmes (Holmes) testified that on the date in question, she was inside the kitchen of her residence, located on the first level of the house, along with her 1-year-old child. *Id.* at 72, 75. Holmes stated that the handgun that was discovered under the dresser in her bedroom did not belong to her or any residents of the home. *Id.* at 79. Additionally, Holmes stated that there was no firearm in her bedroom prior to the incident. *Id.*

In July 2018, the Commonwealth charged Appellant with myriad offenses, including those listed above. On March 18, 2019, the case proceeded to a two-day jury trial. The jury found Appellant guilty of the above crimes.[5]

On May 8, 2019, the trial court sentenced Appellant to an aggregate 4 to 9 years' incarceration. Appellant timely filed post-sentence motions, challenging, *inter alia*, the weight and sufficiency of the evidence supporting his convictions. The trial court denied the motion without a hearing.

---

[5] In response to a motion for judgment of acquittal filed by Appellant, the trial court granted the motion regarding charges of simple assault and burglary.

Following reinstatement of Appellant's appeal rights, *nunc pro tunc*, Appellant timely filed a notice of appeal. Both Appellant and the trial court have complied with the dictates of Pa.R.A.P. 1925.

Appellant presents four issues for our review:

1. DID THE COMMONWEALTH PRESENT INSUFFICIENT EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION FOR CARRYING A FIREARM WITHOUT A LICENSE WHERE THE EVIDENCE DID NOT DEMONSTRATE THAT APPELLANT CONCEALED THE FIREARM ON OR ABOUT HIS PERSON?

2. DID THE COMMONWEALTH PRESENT INSUFFICIENT EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION FOR DISORDERLY CONDUCT WHERE THE EVIDENCE OF RECORD DOES NOT DEMONSTRATE THAT APPELLANT HAD THE INTENT TO COMMIT, OR RECKLESSLY CREATED A RISK OF, PUBLIC ANNOYANCE, INCONVENIENCE OR ALARM WHERE THE OFFENSE OCCURRED IN A PRIVATE RESIDENCE TO WHICH [APPELLANT] WAS PERMITTED ACCESS?

3. DID THE TRIAL COURT COMMIT AN ABUSE OF DISCRETION AND/OR ERR WHEN IT PERMITTED THE COMMONWEALTH, OVER DEFENSE OBJECTION, TO INTRODUCE EVIDENCE THAT APPELLANT HAD TRIED TO ESCAPE FROM LAW ENFORCEMENT ONE WEEK PRIOR TO THE INSTANT ENCOUNTER WITH POLICE?

4. DID THE TRIAL COURT COMMIT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW WHEN IT DENIED APPELLANT'S REQUEST FOR A MISTRIAL AFTER OFFICER BERNATOWICZ TESTIFIED THAT THE POLICE REQUIRED MULTIPLE RESPONDING UNITS DUE TO THEIR HISTORY WITH APPELLANT AND SAFETY ISSUES, AS THIS REFERENCE TO PAST CRIMINAL CONDUCT AND/OR CONTACT WITH POLICE UNFAIRLY PREJUDICED APPELLANT AND UNDERMINED THE PRESUMPTION OF INNOCENCE?

Appellant's Brief at 9.

Appellant first challenges the sufficiency of the evidence supporting his conviction of firearms not to be carried without a license, and claims the Commonwealth failed to prove all elements of the offense. *See* Appellant's Brief at 26-29.

In reviewing a sufficiency challenge, the standard of review we apply is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. . . . Finally, the trier-of-fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Widger*, 237 A.3d 1151, 1156 (Pa. Super. 2020) (citation and brackets omitted).

The Crimes Code defines firearms not to be carried without a license, in pertinent part, as follows:

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm **concealed** on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1) (emphasis added). We have explained that the "issue of concealment depends upon the particular circumstances present in each case, and is a question for the trier of fact." *Commonwealth v. Horshaw*, 346 A.2d 340, 343 (Pa. Super. 1975) (citation omitted) (analyzing prior version of Section 6106 that also contained the element of carrying a firearm "concealed on or about his person"). "[A]ny concealment, even partial, is sufficient to satisfy the concealment element of the crime." *Commonwealth v. Montgomery*, 192 A.3d 1198, 1201 (Pa. Super. 2018) (emphasis omitted).

> Here, Appellant argues:
>
> the evidence does not show that Appellant intentionally, knowingly, or recklessly concealed the weapon on or about his person. In fact, Officer Bernatowicz testified that he saw the firearm **in plain sight** [in] Appellant's hand when he ran down the back staircase of the house. N.T., 3/18/19, at 40. The Commonwealth did not present any evidence as to where the gun came from prior to appearing in Appellant's hand on that staircase. . . . Absent evidence of how the gun came into Appellant's hands, any inference that Appellant had **concealed** the weapon on or about his person prior to appearing with it on the back staircase is little more than speculation and conjecture and is an insufficient inference to support a finding of concealment beyond a reasonable doubt.

Appellant's Brief at 27-28 (emphasis added, citation modified).

Appellant's claim misses the mark. Indeed, the evidence, viewed in the light most favorable to the Commonwealth, was more than sufficient to establish the concealment element of section 6106(a)(1) beyond a reasonable doubt. Bernatowicz unequivocally stated that Appellant ran once he noticed

the police presence, with a pistol in his hand, before barricading himself in Holmes' bedroom. N.T., 3/18/19, at 40, 44. There were no other occupants in the bedroom at the time, and Holmes stated that there was no firearm in her bedroom prior to Appellant's entry. *Id.* at 45-46, 79. The police discovered the firearm partially hidden under a dresser, which was located directly next to where Appellant was standing when he barricaded the door. *Id.* at 51. The element of concealment was established circumstantially by the Commonwealth, which is permissible. *See Widger*, *supra*.[6] Accordingly, there is no merit to Appellant's sufficiency challenge to his conviction of firearms not to be carried without a license. *See, e.g., Commonwealth v. Pressley*, 249 A.2d 345, 346 (Pa. 1969) (holding it was proper for a jury to infer concealment where an officer observed defendant, who was standing across the street, reach under his sweater and then saw a gun at the defendant's feet after a bus passed between the officer and the defendant); *see also Commonwealth v. Montgomery*, 234 A.3d 523, 535 (Pa. 2020) (collecting cases and holding that "we decline [a]ppellant's invitation to interpret "concealed" as requiring the defendant to obscure the firearm from sight completely.").

---

[6] Moreover, Appellant's decision to flee from police and attempt to conceal the firearm in Holmes' bedroom supported an inference of Appellant's consciousness of guilt. *See Commonwealth v. Laird*, 988 A.2d 618, 627 (Pa. 2010) (indicating that flight and concealment can constitute circumstantial proof of consciousness of guilt); *Commonwealth v. Jordan*, 212 A.3d 91, 97 (Pa. Super. 2019) (same).

In his second issue, Appellant argues that the Commonwealth failed to prove all elements of the crime of disorderly conduct beyond a reasonable doubt. *See* Appellant's Brief at 29-31.

The Crimes Code defines disorderly conduct, in relevant part, as follows:

**(a) *Offense defined.* —** A person is guilty of disorderly conduct if, with intent to cause **public** inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

**\* \* \***

**(4)** creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503(a)(4) (emphasis added). Additionally, section 5503 defines the term "public":

As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

*Id.* § 5503(c). Finally, section 5503 provides that "[a]n offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience . . . ." *Id.* § 5503(b).

Here, Appellant contends,

the Commonwealth cannot demonstrate that Appellant intended to cause **public** inconvenience, annoyance or alarm or recklessly created this risk. All of the charged conduct in this case occurred within a private residence. Ms. Holmes testified that Appellant was a frequent guest at her home, was welcome there, and was permitted to be there on that day.

Appellant's Brief at 30 (emphasis in original, footnotes omitted).

- 9 -

Contrary to Appellant's claim, the charged criminal conduct did not occur exclusively in a private residence. Appellant, who had an active warrant for his arrest, was seen running from police, with a visible firearm on his person on a **common** stairwell of an apartment building, despite being legally prohibited from possessing a firearm. N.T., 3/18/19, at 40; **see also** 18 Pa.C.S.A. § 5503(c) (defining "public" as including "apartment houses"). Appellant is correct that Holmes testified she initially believed that Appellant, a friend, had entered her home on the date in question to use her restroom, **see** N.T., 3/18/19, at 74, 83-84. However, there is no indication that Holmes invited Appellant to barge in, unannounced, while being pursued by police to avoid apprehension, and causing damage to the home.

Moreover, the case Appellant primarily relies upon to support his claim, **Commonwealth v. Lawson**, 759 A.2d 1 (Pa. Super. 2000), is distinguishable. In that case, the defendant was convicted of, *inter alia*, disorderly conduct following his arrest while attending a loud college party inside an apartment. *Id.* at 3. The defendant raised a sufficiency challenge to this conviction; he argued he was not in a public place for purposes of section 5503(c), since the party was held in a private residence. *Id.* at 5. This Court agreed, stating that the "party was open only to the renters of the apartment and their invited guests. We decline the invitation to extend the definition of 'public' to encompass this group even if the number of guests totaled twenty or thirty persons." *Id.* at 6. We find that the circumstances

of **Lawson** bear no relation to this case. Accordingly, the Commonwealth presented sufficient evidence for the jury to find all elements for a conviction of disorderly conduct beyond a reasonable doubt, and Appellant's second issue fails.

Appellant next claims the trial court erred in admitting, over his objection, testimony from Bernatowicz that Appellant had fled from police one week prior to the incident giving rise to the instant charges (referred to as "Appellant's prior flight"). **See** Appellant's Brief at 31-33. Appellant argues that this improper and highly prejudicial evidence of unrelated criminal activity characterized Appellant as a person of criminal propensity, and deprived him of a fair trial. **Id.** at 33.

Our standard of review concerning a challenge to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

**Commonwealth v. Johnson**, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

It is well established that,

> [g]enerally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity.

- 11 -

Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009). We have explained that another exception to Rule 404(b)

is the common law "same transaction" or "*res gestae*" exception. *Commonwealth v. Brown*, 52 A.3d 320, 325-26 (Pa. Super. 2012). This exception is applicable in "situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development." *Id.* In other words, the exception applies to prior bad acts "which are so clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible." *Id.* at 330-31 (emphasis omitted).

*Commonwealth v. Knoble*, 188 A.3d 1199, 1205 (Pa. Super. 2018).

Prior to the commencement of Appellant's jury trial, the prosecutor stated:

The Commonwealth would request an opportunity to question the [police] officers with respect to a prior incident, approximately a week before the current incident, where officers responded to a residence and [Appellant] fled from them at that time. The warrant was, I believe, executed in February, so we would just be showing -- we would be asking to have testimony to that prior flight just to show [Appellant's] mental state and knowledge of the warrant.

N.T., 3/18/19, at 4. Appellant's counsel objected on the basis that this evidence was unduly prejudicial and irrelevant. *Id.* at 4-5. The trial court

ruled: "I'm going to allow it in there. I find that it is relevant to show [Appellant's] state of mind and knowledge, and I do find its probative value outweighs any unfair prejudice, so I will permit that." *Id.* at 5. This ruling resulted in the following exchange between the prosecutor and Bernatowicz:

> Q. Now officer, you had responded to a scene a week prior from which [*sic*] [Appellant] . . . fled from you, correct?
>
> A. That is correct.
>
> Q. All right. And on this particular date, with that prior fleeing, you asked for the backup, because of the concern that [Appellant] was going to flee again; is that correct?
>
> A. That is correct.

*Id.* at 38-39.[7]

> On appeal, Appellant contends,
>
> mere evidence of Appellant's prior flight from police (without any explanation of the circumstances leading up to the flight) is not probative as to whether Appellant had knowledge of a warrant and/or fled to avoid lawful apprehension under that warrant on May 17, 2018. The exceptions to Rule 404(b) "cannot be stretched in ways that effectively eradicate the rule." *Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*). As the prior incident provides no insight into Appellant's mental state on May 17, 2018 and does not establish his knowledge of a warrant, this evidence only serves to make Appellant appear to be a person of unsavory character.

Appellant's Brief at 33.

---

[7] There was no evidence presented to the jury of the details surrounding Appellant's prior flight.

- 13 -

We, like the trial court, conclude that Appellant's prior flight was relevant to present the history of the case to the jury, and its probative value outweighed the prejudice it may have caused Appellant. ***See Commonwealth v. Serge***, 837 A.2d 1255, 1261 (Pa. Super. 1999) (stating that all Commonwealth evidence in a criminal proceeding is generally prejudicial to the defendant, but relevant evidence is to be excluded only when it is **unfairly** prejudicial); ***see also id.*** ("a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which a defendant is charged." (citation omitted)). Appellant's prior flight was properly admitted to explain to the jury the chain of events that formed the natural development of the case. ***See Knoble***, ***supra***. Specifically, this evidence gave the jury background information that would tend to explain the reason for the police action in sending multiple units to the house to apprehend Appellant, *i.e.*, that Appellant was a flight risk. Finally, Appellant's prior flight occurred just a week prior to the Appellant's instant arrest; thus, remoteness is not an issue. Accordingly, the trial court committed no abuse of discretion in admitting the challenged evidence under Rule 404(b).

In his fourth and final issue, Appellant argues that the trial court abused its discretion in denying his motion for a mistrial, which he raised after Bernatowicz made an improper statement on direct examination about prior

police interactions with Appellant. *See* Appellant's Brief at 34-39. Specifically, Bernatowicz stated: "Given the history that we had with [Appellant], it was deemed necessary to have multiple [police] units respond to that address for safety issues." N.T., 3/18/19, at 33-34; *see also id.* at 34 (where Appellant's counsel immediately objected and requested a sidebar).

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011) (citation omitted). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Chamberlain*, 30 A.3d at 422 (citation omitted); *see also Laird*, 988 A.2d at 638 (noting mistrial is an extreme remedy). We have also stated that "[m]ere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference." *Commonwealth v. Stafford*, 749 A.2d 489, 496 (Pa. Super. 2000) (citation omitted).

Moreover, it is settled that "the possible prejudicial effect of a witness's reference to the prior criminal conduct of a defendant may, under certain circumstances, be removed by an immediate cautionary instruction to the jury." *Commonwealth v. Pursell*, 495 A.2d 183, 192 (Pa. 1985); *see also Commonwealth v. Spotz*, 716 A.2d 580, 593 (Pa. 1998) (stating that a mistrial is not necessary where cautionary instructions are adequate to

overcome any potential prejudice).  Finally, the law presumes that a jury will follow the trial court's instructions.  ***Commonwealth v. Speight***, 854 A.2d 450, 458 (Pa. 2004).

Here, Appellant argues:

Bernatowicz's remark clearly alerted the jury to the fact that Appellant had a prior history with the Erie Police Department and that future interactions would require multiple police units to ensure safety.  Not only does this indicate to the jury that Appellant may have a criminal past but also that his past is violent and threatening.  Even the trial court agreed that Bernatowicz's statement implied that Appellant was a violent person and/or had committed a past violent crime.  N.T., 3/18/19, at 37-38. Bernatowicz's reference was improper.

Appellant's Brief at 37 (citation modified).  Appellant, however, concedes that the prosecutor's questioning of Bernatowicz "does not suggest that the [prosecutor] intentionally elicited this remark[.]" ***Id.***  Appellant further states he "does not accept the trial court's position that a curative instruction can cure the prejudice from Bernatowicz's reference to prior violent conduct." ***Id.*** at 38.

The trial court rejected Appellant's claim, and explained:

As to Appellant's contention that the court erred in denying Appellant's request for a mistrial after Officer Bernatowicz testified that the police required multiple responding units due to their history with Appellant, the court spoke to counsel at sidebar and determined declaring a mistrial would not be necessary.  The court asked Appellant's counsel if he would like a curative instruction to be given to the jury at that time; however, trial counsel stated "I'm thinking [a] curative instruction might cause more prejudicial damage."  N.T., 3/18/19, at 36.  The court then granted the Commonwealth's request to lead the witness as to his previous contact with Appellant, wherein a week previous to the incident at issue Appellant had fled from the Officer.  [The trial court stated]

- 16 -

"I think that would go some way to negating the implication that there was a violent crime involved. I mean, if they believed they needed more people because he would be fleeing . . . .["] N.T., 3/18/19, at 37. Additionally, the court held a sidebar with counsel to discuss the jury instructions:

> The Court: I was going to say [to the jury that] you do not have to pay attention to that or something; you don't have to concern yourself with that. I'm instructing you this was a procedure by the Erie Police Department that they employ in similar operations.
>
> [Defense counsel]: Yes, Your Honor.
>
> The Court: You don't need to take this into account during your deliberations.
>
> [Defense counsel]: Okay.

N.T., 3/18/19, at 68. The court instructed the jury:

> Yesterday you heard Officer Bernatowicz testify that he was -- he had some safety concerns with the [police] operation at the location where this all occurred. Do not take this into account during your deliberations. I'm instructing you that this was simply procedure by the Erie Police Department, that they employ in all similar operations.

*Id.* at 112-13. Thus, the court did not commit an abuse of discretion and/or error of law in concluding that a mistrial was unnecessary.

Memorandum Opinion, 12/16/19, at 4-5 (citations modified).

Upon review, the court's analysis is supported by the record and the law, and we discern no abuse of its discretion in the court declining to grant the extreme remedy of a mistrial. *See, e.g., Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008) ("A singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its

discretion in denying the defendant's motion for a mistrial."); ***Commonwealth v. Hudson***, 955 A.2d 1031, 1034 (Pa. Super. 2008) (holding that testimony suggesting defendant was visiting his probation officer was not prejudicial following a curative instruction); ***Commonwealth v. Johnson***, 666 A.2d 690, 695 (Pa. Super. 1995) (holding that a witness's statement that he knew the accused "just got out of jail" was not so prejudicial as to require a mistrial, because it was a passing remark, and it was not intentionally elicited by the Commonwealth). Further, the overwhelming evidence of Appellant's guilt rendered harmless any potential prejudice from Bernatowicz's passing remark. ***See Commonwealth v. Moore***, 937 A.2d 1062, 1073 (Pa. 2007) ("An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict."). Thus, Appellant's final issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2021