J-S15026-18

2018 PA Super 135

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JEFFREY SCOTT KNOBLE, JR.<br>Appellant | : | No. 2671 EDA 2017 |

Appeal from the Judgment of Sentence February 1, 2017
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0001405-2015

BEFORE:  STABILE, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

OPINION BY DUBOW, J.:                              **FILED MAY 24, 2018**

Appellant, Jeffrey Scott Knoble, Jr., appeals from the Judgment of Sentence imposed after a jury convicted him of two counts each of Terroristic Threats and Firearms Not to be Carried Without a License, and one count each of First-Degree Murder, Criminal Mischief, and Unauthorized Use of an Automobile.  Appellant challenges the court's joinder of three separate criminal dockets for trial and the denial of his Motion to Suppress.  After careful review, we affirm.

The facts and relevant procedural history, as gleaned from the record, are as follows.  On March 10, 2015, at 7:53 AM, Octavia Douglas, Appellant's then-girlfriend, contacted Phillipsburg Police to report that Appellant had taken her rental car without permission.  She also called Appellant's mother, Ms. Knoble, and told her that Appellant was going to crash the rental car.  Ms. Knoble contacted Appellant and Appellant threatened to shoot police officers.

Ms. Knoble convinced Appellant to stop driving Ms. Douglas's car and arranged to pick him up in Easton.

When Ms. Knoble arrived in Easton, Appellant left Ms. Douglas's car running with the door open and entered Ms. Knoble's car, laying a firearm across his lap. Appellant told Ms. Knoble that he had shot and killed someone, and continued to threaten to shoot police officers. Ms. Knoble told Appellant that she would not permit him in her home and subsequently drove him to his grandmother's house in Riegelsville, Pennsylvania.

A few hours later, Pennsylvania State Police received a report of an abandoned vehicle and discovered Ms. Douglas's rental vehicle running and unoccupied. The vehicle had been shot four times: three times in the driver's side front door and one time in the driver's side passenger door.

On March 11, 2015, at approximately 2:00 AM, Appellant began communicating with Andrew "Beep" White (the "Victim"). Because Ms. Knoble refused to let Appellant in her house, Appellant requested to stay at the Victim's apartment for the night, but the Victim refused. Ultimately, the Victim agreed to rent a room for Appellant at the Quality Inn in Easton.

Later that morning, Appellant again contacted Ms. Knoble and asked her to pick him up on Northampton Street in Easton. When Ms. Knoble arrived, Appellant entered her car and reported that he had shot and killed someone and that "they were safe now." Trial Ct. Op., 3/10/16, at 2. Ms. Knoble told

- 2 -

police that Appellant showed her a cell phone video that depicted Appellant in a room along with the body of a nude male surrounded by blood.[1]

About an hour later, Ms. Knoble contacted the Easton Police Department ("EPD") to report that Appellant had told her that he had killed someone and that, based on Appellant's statements to her, she believed he intended to shoot and kill police officers. The EPD began searching for Appellant. During their search, Ms. Knoble informed police that Appellant continued to contact her via text messages and phone calls and repeatedly threatened to shoot police officers. As a result of this information, when the EPD arrested Appellant, the Commonwealth charged him with two counts of Terroristic Threats at Docket No. CP-48-CR-0001405-2015 ("Docket No. 1").[2]

During the course of their search for Appellant,[3] EPD obtained information that Appellant was in Ms. Knoble's Easton home. Police converged on the home and, through negotiations, Appellant surrendered that afternoon. Police then conducted a protective sweep and, with Ms. Knoble's consent, subsequently searched the home. They seized two cell phones: the Victim's white Samsung S5 cell phone; and Appellant's Kyocera cell phone, which he had used to communicate with Ms.Knoble and on which he had shown her the video of himself with the Victim's deceased body. Police officers also seized a

---

[1] **See also** N.T. Suppression Hrg., 10/13/15, at 46.

[2] One count each of 18 Pa.C.S. § 2706(a)(1) and 18 Pa.C.S. § 2706(a)(3).

[3] EPD's search for Appellant required the lockdown of a local elementary school and daycare.

semi-automatic .40-caliber firearm; a dark-colored pea coat; a cell phone charger; a backpack; a ball cap; various clothes; and ammunition.

Later in the day on March 11, 2015, EPD received a call from Priscilla High, reporting that she was concerned about her friend, the Victim. After receiving a report that the Victim was last seen the previous night entering the Quality Inn in Easton, EPD officers went to the Quality Inn. The desk clerk confirmed that the Victim had checked in to Room 418, and provided police with a copy of the Victim's driver's license and his room receipt. Police proceeded to Room 418 and found the Victim's naked body. An autopsy determined the Victim had died from a single gunshot wound to the head. The coroner ruled his death a homicide.

Surveillance video from the fourth floor of the Quality Inn showed Appellant and the Victim entering Room 418 together in the early hours of the morning of March 11, 2015. The video also showed Appellant leaving the room at approximately 8:00 AM wearing the grey coat the Victim had been wearing earlier that night. The surveillance footage shows that no one other than Appellant entered or exited the room until the arrival of police later that day.

Based upon this evidence, and the evidence indicating that the firearm found in Ms. Knoble's home was the weapon used to commit the homicide and to shoot Ms. Douglas's rental car, EPD arrested Appellant pursuant to a warrant on March 18, 2015. The Commonwealth ultimately charged Appellant with First-Degree Murder, Robbery, and two counts of Firearms Not to be

- 4 -

Carried Without a License at Docket No. CP-48-CR-0001413-2015 ("Docket No. 2").[4]

On April 13, 2015, EPD obtained a warrant to search the contents of Appellant's cell phone. That same day, EPD Inspector Dan Reagan provided Appellant's cell phone to Jonathan Langton, a digital forensic analyst assigned to the Petzold Digital Forensics Laboratory. Using forensic software, Langton extracted data from it, identifying multiple still images. One photo of particular note depicted the Victim lying face down on a bed in a pool of blood with a wound on his head.[5] At that time, the software did not uncover any video images on Appellant's cell phone.

On June 24, 2015, the Commonwealth filed a Motion for Joinder of the Informations filed at Docket No. 1 and Docket No. 2. On July 24, 2015, Appellant filed a Response to the Motion for Joinder and an Omnibus Pretrial Motion. After a hearing, on September 9, 2015, the court issued an Order joining Docket No. 1 and Docket No. 2 for trial. Appellant subsequently filed two Supplemental Pretrial Motions requesting, *inter alia*, the suppression of the photographic evidence obtained from the search of his cell phone.

---

[4] 18 Pa.C.S § 2502(a); 18 Pa.C.S. § 3701(a)(1); and 18 Pa.C.S. § 6106(a)(1), respectively.

[5] According to Langton's analysis of the file, Appellant took the picture on March 11, 2015 at 5:45 AM, and attempted to delete it at 12:28 PM that same day. This image is a separate photograph, not part of a video file. N.T. Trial, 1/26/17 at 22-23.

- 5 -

On September 16, 2015, the court arraigned Appellant on separate charges of Possession of a Firearm Prohibited, Criminal Mischief, and Unauthorized Use of an Automobile[6] at Docket No. CP-48-CR-0003844-2015 ("Docket No. 3") arising from his actions on the morning of March 10, 2015.

On December 15, 2015, the Commonwealth filed a Motion for Joinder of Informations seeking to join Docket No. 3 with the previously-joined Docket No. 1 and Docket No. 2. After a hearing, on March 7, 2016, the trial court granted the Commonwealth's Motion for Joinder. It denied Appellant's Omnibus Pretrial Motions on March 10, 2016.[7]

Meanwhile, on December 16, 2015, Appellant requested that the Commonwealth provide digital copies of the data retrieved from Appellant's cell phone, in April 2015, to his expert. The Commonwealth informed Appellant that it had already turned over all requested materials and advised that Appellant could arrange with Inspector Reagan to conduct their own examinations of certain cell phones. Thus, in early January 2016, at the request of Barry Golazeski, Appellant's expert, Inspector Reagan asked that Langton provide the raw data he extracted from Appellant's cell phone to

---

[6] 18 Pa.C.S. § 6105(a)(1); 18 Pa.C.S. § 3304(a)(1); and 18 Pa.C.S. § 3928(a), respectively.

[7] Thus, the court deemed the photograph found on Appellant's cell phone admissible. Appellant does not challenge the validity of the April 13, 2015 search warrant in the instant appeal.

Golazeski.[8]  Langton attempted to provide Golazeski with the raw data, but was unable to because the hard drive where he had stored the data had crashed.

Langton believed that the only way to comply with the request of Appellant's expert was to re-extract the data from Appellant's cell phone. Thus, on January 8, 2016, Inspector Reagan took the cell phone, which had continuously been in police custody since its seizure in March 2015, back to the Petzold Laboratory where Langton conducted a second extraction on January 12, 2016.  Police did not obtain a new search warrant in connection with this extraction.

The second extraction process took longer than the first, and identified additional data.  Langton was able to recover additional evidence during the second extraction because the software originally used had been updated.[9] Using the updated software, Langton recovered two video files depicting Appellant in a hotel room with the deceased Victim.

The videos retrieved in the second search existed as files separate and independent from each other and separate and independent from the still

---

[8] Langton testified that Golazeski did not want the report that Langton had created from the data extracted from Appellant's cell phone in April 2015. Rather, Golazeski wanted to analyze the raw data itself.  N.T. Suppression Hrg., 10/25/16, at 20.

[9] Langton testified that the software he used, the Cellebrite digital forensic suite, updates automatically approximately six to ten times per year.  N.T. Suppression Hrg., 10/25/16, at 14.

photographs discovered during the first search. The first video was approximately 25 seconds long and depicted Appellant in what appeared to be Room 418 of the Quality Inn. The video showed Appellant with the Victim, who was bound and appeared to be deceased as Appellant narrates the video and pans the camera over himself and the Victim. The second video is close to one minute long, and depicts the Victim face down covered in blood in what appeared to be Room 418. On the video Appellant references a bullet hole in the Victim's head. Images of Appellant and the Victim are present in the second video as well as the first. Langton could not determine when Appellant had made the videos, but concluded that Appellant attempted to delete them at 12:36 PM and 12:37 PM on March 11, 2015.

Langton provided the raw data retrieved from the second extraction to Appellant's expert on January 14, 2016.

On July 15, 2016, Appellant filed a Third Supplemental Omnibus Pretrial Motion seeking to suppress the two video files obtained from the second search of his cell phone. Appellant alleged that law enforcement agents of the Petzold Digital Forensics Laboratory performed the second extraction without a warrant and without any applicable exception to the warrant requirement in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. *See* Third Supplemental Omnibus Pretrial Motion, 7/15/16, at ¶¶ 16-17. Appellant further argued that, to the extent police ever secured a warrant to search his cell phone, they did not support the warrant with

probable cause. *See id.* at ¶ 18. Thus, Appellant sought the suppression of evidence obtained from both data extractions.

The suppression court held a hearing on October 25, 2016. Inspector Reagan and Langton testified extensively about the second extraction of data that revealed the videos.

On December 6, 2016, the court denied Appellant's Third Supplemental Omnibus Pretrial Motion, finding that the original search warrant obtained for Appellant's cell phone was supported by probable cause and authorized both the first and second data extractions.

Appellant's jury trial began on January 9, 2017. Relevant to the instant appeal, the Commonwealth presented the testimony of Inspector Reagan and Langton, as well as that of M. Knoble. Ms. Knoble specifically testified about the timeline of events and the video of the Victim that Appellant had shown her.

On January 31, 2017, the jury convicted Appellant of two counts each of Terroristic Threats and Firearms Not to be Carried Without a License, and one count each of First-Degree Murder, Criminal Mischief, and Unauthorized Use of an Automobile. Appellant waived his right to a Pre-Sentence Investigation.

On February 1, 2017, the court sentenced Appellant to life imprisonment for his First-Degree Murder conviction, and an aggregate sentence of 9½ to 28 years' imprisonment for the Firearms Not to be Carried Without a License,

Terroristic Threats, Criminal Mischief, and Unauthorized Use of an Automobile

convictions.

Appellant filed a timely appeal from his Judgment of Sentence. Both

Appellant and the trial court complied with Pa.R.A.P. 1925.[10]

Appellant raises the following two issues on appeal:

1. The [t]rial [c]ourt erred in joining the Information charging Appellant with [T]erroristic [T]hreats and the Information charging Appellant with [C]riminal [M]ischief with the Information charging Appellant with [C]riminal [Homicide].

2. The [t]rial [c]ourt erred in failing to suppress the videos obtained from Appellant's cell phone in January 2016.

Appellant's Brief at 4.

## Joinder

In his first issue, Appellant challenges the trial court's joinder of his three

Criminal Informations. In particular, Appellant claims that joining the offenses

prejudiced him because the charged offenses were not based on the same act

or transaction, and their joinder allowed the jury to hear evidence against him

that would not have been admissible in separate trials. *Id.* at 21.

"Whether to join or sever offenses for trial is within the trial court's

discretion and will not be reversed on appeal absent a manifest abuse thereof,

or prejudice and clear injustice to the defendant." ***Commonwealth v.***

***Wholaver***, 989 A.2d 883, 888 (Pa. 2010).

---

[10] Rather than submit a separate Rule 1925(a) Opinion, the trial court directed this Court's attention to its September 9, 2015, March 7, 2016, March 10, 2016, and December 16, 2016 Opinions as the places in the record where the court set forth the reasons for its decisions.

Pennsylvania Rules of Criminal Procedure 582(A)(1) provides that distinct offenses which do not arise out of the same act or transaction may be tried together if the "evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[] or the offenses charged are based on the same act or transaction." Pa.R.Crim P. 582(A)(1)(a)-(b). If the trial court finds that the evidence is admissible and the jury can separate the charges, the court must also consider whether consolidation would unduly prejudice the defendant. **Commonwealth v. Thomas**, 879 A.2d 246, 260 (Pa. Super. 2005).

While evidence of other criminal behavior is not admissible to demonstrate a defendant's propensity to commit crimes, it may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity[,] or absence of mistake or accident so long as the probative value of the evidence outweighs its prejudicial effect." **Commonwealth v. Smith**, 47 A.3d 862, 867 (Pa. Super. 2012) (citing Pa.R.E. 404(b)(2), (3)).

Another exception is the common law "same transaction" or "*res gestae*" exception. **Commonwealth v. Brown**, 52 A.3d 320, 325-26 (Pa. Super. 2012). This exception is applicable in "situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development." **Id.** In other words, the exception applies to prior bad acts "which are so clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of

- 11 -

relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible." *Id.* at 330–31 (emphasis omitted).

In the instant case, the trial court first considered the Commonwealth's Motion for Joinder of Appellant's Criminal Homicide and related charges with his Terroristic Threats charges, *i.e.*, Docket No. 1 and Docket No. 2. The court found that each of the offenses was "so interwoven that the [I]nformations must be joined in order to demonstrate the history and natural development of the facts." Trial Ct. Op., 9/9/15, at 2 (unpaginated). The court explained that "[t]hese two cases occurred almost simultaneously, were investigated simultaneously, and share common facts[.]" *Id.* Therefore, the court concluded that the Commonwealth demonstrated that these offenses "occurred within the same transaction or occurrence." *Id.* The court also found that "denying the Commonwealth the opportunity to present the overall picture and natural sequence of events by trying these offenses separately would confuse and mislead the jury." *Id.* Thus, the court concluded that the probative value of joinder outweighed the potential prejudice to Appellant.

Next, the court considered the Commonwealth's Motion for Joinder of Appellant's Criminal Mischief and Unauthorized Use of an Automobile charges (Docket No. 3) with the previously joined Criminal Homicide and Terroristic Threats charges (Docket No. 1 and Docket No. 2). The court's explanation for its decision to grant this Motion for Joinder was similar to its prior explanation. *See generally* Trial Ct. Op., 3/7/16. In addition, the court noted that

Appellant's mother "continuously contacted both [Appellant] and law enforcement in such a short amount of time, regarding all three cases, which helps link these crimes as one sequence of events and not as distinct." *Id.* at 2 (unpaginated). The court specifically concluded that "the elements of the crimes are straightforward and will not be difficult for a jury to distinguish." *Id.*

Following our review, we agree with the trial court. Given the timeline of events and the interrelatedness of Appellant's crimes as described above, including his use of the same weapon to shoot at Ms. Douglas's vehicle and to kill the victim, the evidence of each crime would have been admissible in the trials for the other offenses so that the jury could fully understand the natural development of the case. Thus, we conclude that the trial court did not abuse its discretion in granting the Commonwealth's Motions for Joinder. Appellant is not entitled to relief on this issue.

**Suppression of Cell Phone Video Evidence**

In his second issue, Appellant challenges the denial of his Motion to Suppress the video evidence obtained during the second search of his cell phone.

We review the trial court's decision to deny a motion to suppress to determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Freeman*, 150 A.3d 32, 34 (Pa. Super. 2016). Further, "[b]ecause the Commonwealth prevailed before the suppression

court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* We are bound by the suppression court's factual findings where they are supported by the record, and we may reverse only if the court's legal conclusions are erroneous. *Id.* at 35. Because this Court's mandate is to determine if the suppression court properly applied the law to the facts, our scope of review is plenary. *Id.*

Appellant claims that the "Commonwealth's warrantless search of the [c]ell [p]hone and extraction of the raw data therefrom . . . violated [Appellant's] privacy rights[.]" Appellant's Brief at 22. Analogizing the second search of his cell phone to the search of a home, Appellant argues that the second search, which took place nine months after police conducted the initial search, was "well outside the 'outer limit' of any 'reasonable delay' between the issuance and execution" of the authorizing warrant. *Id.* at 24 (citing Pa.R.Crim.P. 205(A)(4)(a)) ("Each search warrant shall be signed by the issuing authority and shall . . . direct that the search be executed . . . within a specified period of time, not to exceed 2 days from the time of issuance[.]"). Appellant argues in the alternative that he did not consent to the second search of his phone using updated software that enhanced the Commonwealth's ability to extract data. *Id.* at 26. He posits that he may not have wanted his expert to review the extracted data had he known that, in order to do so, the Commonwealth would extract additional and extremely prejudicial evidence. *Id.* at 28. Last, Appellant disputes that the introduction

- 14 -

of the two videos was harmless error. *Id.* at 29. Appellant, therefore, concludes that the court erred in not suppressing the seized video files. *Id.* at 25.

The Commonwealth avers that the April 2015 search warrant authorized the subsequent January 2016 search and extraction of data from Appellant's cell phone. In the alternative, the Commonwealth asserts that Appellant consented to the search because the EPD conducted the search pursuant to Appellant's request for information.[11]

It is well-settled that the extraction of data from a cell phone constitutes a search that requires police to obtain a search warrant prior to extraction. *Riley v. California*, 134 S.Ct. 2473 (2014).

It is generally the case that police must speedily execute searches conducted pursuant to a warrant because the decision to issue a warrant "must be based on facts which are closely related in time to the date the warrant is issued." *Commonwealth v. Shaw*, 281 A.2d 897, 899 (Pa. 1971). However, our Supreme Court has recognized that "[t]here are times when the facts and circumstance[s] presented to the magistrate [in support of the warrant] remain unchanged long after the warrant is issued." *Commonwealth v. McCants*, 299 A.2d 283, 286 (Pa. 1973). In instances

---

[11] Commonwealth's Brief at 20, 24-27.

- 15 -

where the facts and circumstances upon which the search warrant was based remain unchanged with the passing of time, probable cause still exists.[12]

On April 13, 2015, after demonstrating the existence of probable cause, the Commonwealth obtained a warrant to extract data from Appellant's cell phone. That same day, Langton extracted data from Appellant's cell phone pursuant to that valid warrant. Nine months later, Langton conducted a second extraction in order to fulfill Appellant's expert's request to review the raw data.

Here, this Court's review of the record reveals that the facts and circumstances supporting the issuance of the April 13, 2015 search warrant remained unchanged at the time of the second extraction. EPD had legally seized Appellant's cell phone from Ms. Knoble's residence with her consent in March 2015. EPD then secured the phone to ensure that it remained in its original condition and that no one could alter its contents. Appellant's cell phone was in police custody during the entirety of the relevant period and remained unalterable. It is, thus, evident that the facts and circumstances presented to the magistrate who issued the initial search warrant did not change. Accordingly, we conclude that the April 13, 2015 search warrant authorized the subsequent search and obviated the need for the

---

[12] *Cf. U.S. v. Edwards*, 415 U.S. 800 (1974) (upholding, in the context of a warrantless search incident to arrest, the validity of a subsequent search of the defendant's property where the initial search was legal and the property had remained in police custody in the intervening period).

Commonwealth to obtain another warrant.[13]  Appellant is, therefore, not entitled to relief on this issue.

Judgment of Sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/18

---

[13] Having so concluded, we decline to address the Commonwealth's contention that Appellant's expert's request for raw data indicated Appellant's consent to the subsequent search of his phone.