J-S24010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HECTOR LUIS ROMAN-ROSA | : | |
| | : | |
| Appellant | : | No. 111 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 13, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000218-2021

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: DECEMBER 6, 2023**

Appellant, Hector Luis Roman-Rosa, appeals from the aggregate judgment of sentence of 20 to 50 years of incarceration, and a consecutive period of seven years' probation, imposed following his convictions for, *inter alia*, raping K.R., a minor. Appellant primarily challenges the trial court's denial of his motion to sever charges concerning a separate minor victim, Y.C. We agree that the trial court abused its discretion in failing to sever the charges, as the evidence concerning each victim would be inadmissible in a trial for the other pursuant to Pennsylvania Rule of Evidence 404(b). However, we conclude that the error was harmless beyond a reasonable doubt. We further conclude that the weight of the evidence supported the verdict, and therefore affirm the judgment of sentence.

_____

[*] Former Justice specially assigned to the Superior Court.

K.R. was born in July of 2006. Her mother, M.R., began dating Appellant sometime in 2008. Appellant lived with M.R. and her children. K.R. testified that the abuse began when she was three or four years old. She recalled that Appellant "took me out of my crib, placed me on the floor, took off my clothes, and started touching me." N.T., 4/21/22, at 32. In that incident, Appellant touched her vagina with his hands. She recalled another incident where Appellant rubbed his penis against her vagina. Around age five or six, Appellant progressed to vaginal penetration. He would use his hands to pin K.R.'s arms to the side or above her head.

Appellant and M.R. broke up in 2015. Appellant asked M.R. to allow K.R. to visit, which she agreed to because K.R. viewed Appellant as her stepfather. At his residence, Appellant would direct K.R. to insert a vibrator into her vagina. K.R. eventually disclosed the abuse to a friend, which led to authorities investigating.

The second victim, Y.C., was also born in 2006. Her mother, J.G., began dating Appellant sometime after Appellant and M.R. separated. Y.C. testified that Appellant sexually touched her one evening while she, J.G., and Appellant slept in the same bed. The three slept together on occasion because J.G. had sleep apnea and Y.C. "wanted to make sure [J.G.] was breathing right." *Id.* at 74. Y.C. testified that, at some point one evening, Appellant "went under my shirt and then my bra and then touched me." *Id.* at 75. She could not recall when the incident occurred or how long it lasted. She testified that this was the only incident.

- 2 -

Appellant was acquitted of the two charges pertaining to Y.C. He was convicted of all counts concerning K.R., with the exception of one count of involuntary deviate sexual intercourse. The trial court imposed the aggregate judgment of sentence as specified above, and denied Appellant's post-sentence motions for relief. Appellant filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The trial court subsequently issued a Rule 1925(a) opinion, and we now review Appellant's two claims:

> 1. Whether the trial court erred in approving consolidation of the two cases for trial in one proceeding, because the evidence failed to establish a common plan, there were significant differences between the two alleged courses of conduct, there was a significant difference in age and development between the two complaining witnesses, evidence of each event would not have been admissible at trial for the other, and the evidence of each was therefore only proof of propensity to commit this type of crime?

> 2. Whether the verdict resulting in [Appellant]'s convictions was against the weight of the evidence as the complainant testified that she was frequently beaten by Appellant and that resulted in marks on her body, when her mother testified that she bathed her child and never saw marks on her child and never saw Appellant hit her?

Appellant's Brief at 9.

## I.

## Severance

Appellant's first issue addresses the trial court's denial of his motion to sever the charges concerning Y.C. from those relating to K.R. Whether joint

trials are appropriate is governed by Rules of Criminal Procedure 582 and 583. Rule 582 provides the standards for trying cases together:

**(A) Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582.[1]  Rule 583 permits a court to "order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.  "The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence." ***Commonwealth v. Johnson***, 236 A.3d 1141, 1150 (Pa. Super. 2020) (citation omitted).  "Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to

---

[1] The rule addresses offenses charged in separate instruments whereas, here, the charges were all filed in one criminal information.  The charges were filed together because Y.C.'s disclosure was prompted by the authorities' speaking to Appellant, who still resided with Y.C.'s mother, during their investigation of K.R.'s allegations.  Nevertheless, the parties agree that Rule 582 applies in this situation.

the defendant." **Commonwealth v. Knoble**, 188 A.3d 1199, 1205 (Pa. Super. 2018) (citation omitted).

Appellant filed a pre-trial omnibus motion, which included a motion to sever. Appellant argued that the charges concerning each victim should be prosecuted in separate trials because the incidents were completely dissimilar, as K.R. was prepubescent on the relevant incident dates, while Y.C. was an adolescent. Additionally, the Y.C. incident occurred approximately four to six years after the abuse against K.R. ended. Appellant argued that he would be prejudiced by a joint trial as the jury would "infer criminal disposition … [by] accumulating evidence of various offenses and finding guilt when, if considered separately, it would not so find." Motion, 3/18/21, at unnumbered 2.

The trial court held a hearing on Appellant's motion, and Appellant raised the same points previously stated. The Commonwealth argued that, when Appellant "had an opportunity, he started the same grooming process by touching the victim's breasts." N.T. Motions Hearing, 9/28/21, at 43. The Commonwealth contended that this abuse did not proceed beyond the one incident only because Y.C. "moved out approximately three months after this incident, and moved in with her father[,] … preventing [Appellant] from having contact or the ability to continue to sexually abuse her." **Id.** The Commonwealth asked the trial court to "look at the relevant case law out there regarding what can be admissible as signature and/or *modus operandi* crimes

for purposes of introducing and permitting these charges to be tried together."

*Id.* Ultimately, the trial court denied Appellant's motion to sever.

In its Rule 1925(a) opinion, the trial court defends the ruling while suggesting that the Commonwealth had an ulterior motive of using the case against K.R. to bolster the comparatively weaker case against Y.C.:

> In making the severance determination, the court considered whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and … the potential for undue prejudice from the consolidation.
>
> . . . .
>
> The [c]ourt considered the potential prejudice to [Appellant] in making its decision and considered the likelihood of accumulating evidence to find guilt in each case where[,] if considered separately, a jury may be unlikely to so find. However, the testimony of each girl would have been admissible in each other's trials because the grooming of Y.C. began in the same way as that of K.R. In each case, the child was not the daughter of [Appellant] but that [*sic*] child of his then[-]current girlfriend. Because of the age difference of each victim, the fact that the incident with Y.C. occurred only once, and the fact that K.R. considered [Appellant] to be her father at the time, as well as the difference in the severity of the alleged abuse, there was no danger of confusion in the testimony. Although it appears that the Commonwealth was attempting to bootstrap the weaker case against Y.C. with the stronger case of K.R., it was unsuccessful as [Appellant] was acquitted of the charges concerning Y.C. There was no prejudice to [Appellant].

Trial Court Opinion ("TCO"), 3/2/23, at 9-10 (citations omitted).

On appeal, Appellant reiterates his fundamental argument that the incidents are factually dissimilar. In terms of the law applicable to severance, Appellant maintains that evidence about the Y.C. incident would not have been admissible in a separate trial concerning K.R., and vice versa. Appellant cites

Pennsylvania Rule of Evidence 404(b), arguing that evidence of the other incidents would be barred by that rule because of the dissimilar nature of the allegations. Additionally, addressing the trial court's assertion that Appellant identically groomed both victims, Appellant points out that K.R. testified that the abuse began when she was three, with Appellant's undressing her and touching her vagina, and Appellant proceeded to forcible intercourse by the time K.R. was five or six. In contrast, Y.C. was a teenager, and Appellant did not remove her clothes. Appellant also allegedly abused Y.C. only one time, and Y.C. stated that his abuse was limited to fondling her breasts. Because these incidents were so dissimilar, Appellant asserts that the Commonwealth introduced the evidence only to show propensity, *i.e.*, that Appellant had a habit of sexual abuse. Because evidence that bears only upon propensity would be barred by Rule 404(b), Appellant asks this Court to conclude that the evidence concerning one victim would not be admissible in a trial focused on the remaining victim.

As to what effect this Court should give to the acquittal on the two counts involving Y.C., Appellant submits that the jury was undoubtedly persuaded by Y.C.'s testimony in terms of assessing K.R.'s credibility. Appellant points out inconsistencies in K.R.'s testimony, and argues that "the very act of being able to compare her testimony with Y.C." made the jury more likely to believe K.R. Appellant argues that "no crime … has the same stigma as child molestation," and "[t]he urge to protect vulnerable children is hard-wired into most adults." Appellant's Brief at 27. Appellant avers that

the Commonwealth deliberately played into this urge by trying the cases jointly. He claims that "the only possible reason to join these cases was for the repugnant taint of the criminality of child molestation to taint the jury's view of Appellant and to erroneously convince them that 'where there is smoke, there is fire.'" ***Id.***

The Commonwealth responds that the evidence concerning each victim would be admissible under Rule 404(b) in a trial concerning the other had the cases been severed. Thus, judicial economy warranted trying the cases together. It elaborates:

> [T]he evidence demonstrated that [Appellant] cohabitated with women who had minor daughters. He began grooming the girls by engaging in non-consensual touching of their intimate parts, and while Y.C. was able to stop further sexual assaults, K.R. was unfortunately unable to do so. These activities demonstrated [Appellant]'s motive, intent, absence of mistake and common plan or scheme of committing these crimes, and thus would have been admissible in separate trials pursuant to Pa.R.Crim.P. [*sic*] 404(b). Additionally, the offenses were sufficiently dissimilar to avoid any danger of confusion by the jury.

Commonwealth's Brief at 10. The Commonwealth also argues that Appellant "cannot demonstrate prejudice resulting from the denial of his severance motion, as he was acquitted of all charges involving Y.C. This acquittal further demonstrates the jury's ability to separate the charges regarding the two victims." ***Id.***

### (i)

The trial court erred in denying Appellant's motion to sever

As the parties' arguments recognize, the severance question is essentially a Rule 404(b) question, as the Commonwealth's ability to consolidate the cases for trial is just another way of asking whether the Commonwealth would be able to introduce the evidence of the other allegation if the cases were severed. Cases discussing severance often address whether the evidence would have been admissible under Rule 404(b):

> Pennsylvania Rule of Criminal Procedure 582 provides that joinder of offenses charged in separate indictments or informations is permitted when "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a). While evidence of other criminal behavior is not admissible to show a defendant's propensity to commit crimes, such evidence "may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" so long as the "probative value of the evidence outweighs its prejudicial effect." Pa.R.E. 404(b)(2), (3).

*Commonwealth v. Johnson*, 179 A.3d 1105, 1115–16 (Pa. Super. 2018).

Therefore, we agree as an initial matter that we may analyze this case by reference to Rule 404(b) precedents. Accordingly, the question is whether evidence concerning the other victim would have been barred under Rule 404(b) had the charges been separately tried. We conclude that the evidence would be inadmissible.

The text of Rule 404(b) codifies the common law recognition that propensity evidence is powerfully relevant and prejudicial. As stated in *Shaffner v. Commonwealth*, 72 Pa. 60, 65 (Pa. 1872), "[i]t is not proper to raise a presumption of guilt, on the ground, that having committed one crime,

- 9 -

the depravity it exhibits makes it likely he would commit another." Appellant's core argument is that the Commonwealth attempted to raise a presumption of guilt by presenting testimony of two victims, thereby inviting the jury to conclude that Appellant has a predilection for criminal behavior. The Commonwealth, on the other hand, views the evidence as admissible for a non-propensity purpose. Rule 404(b) includes a list of non-exclusive exceptions for the introduction of other act evidence for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). If this argument is correct, then the evidence was introduced for a proper purpose, and not to show that Appellant had a propensity for sexual abuse. If so, we would ask whether "the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

The Commonwealth invokes several possibilities recognized by Rule 404(b) precedents: "motive, intent, absence of mistake, and common plan or scheme of committing these crimes[.]" Commonwealth's Brief at 10. The Commonwealth offers no elaboration on the details, but as we may affirm the trial court's ruling on any basis supported by the record, we explore each possibility. *Commonwealth v. Harper*, 611 A.2d 1211, 1213 n.11 (Pa. Super. 1992).

Beginning with "motive," this is not a case where that is in question in the sense of determining whether Appellant had a reason for committing the acts beyond sexual gratification. The "motive" theory generally applies in a

case where the crimes at issue "grew out of or was in some way caused" by the other evidence. **Commonwealth v. Cascardo**, 981 A.2d 245, 251 (Pa. Super. 2009) (citation omitted). For example, in **Commonwealth v. Martin**, 387 A.2d 835 (Pa. 1978), the Commonwealth introduced evidence that Martin and some other individuals attempted to rob Anthony Brothers. During the attempted robbery, a man named Kent intervened and struck Martin with a chair. Kent was killed thirteen days later. Our Supreme Court held that the evidence of the robbery was admissible as it supplied a potential motive for the killing of Kent:

> As a general rule, evidence that a defendant has committed another crime wholly independent and unconnected with that for which he is on trial is irrelevant and inadmissible except under special circumstances. One of the special circumstances which operates as an exception to the general rule is the case where the proffered testimony tends to establish the defendant's motive for the crime or crimes charged in the indictment on trial. However, to be admissible under this exception, evidence of a distinct crime, even if relevant to motive, must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.

**Id.** at 838 (quotation marks and citations omitted).

Here, the incidents are independent and unconnected in terms of a motive as the crimes do not grow out of each other. Nothing about the abuse of K.R. would explain or be linked to the abuse of Y.C. **Commonwealth v. Bidwell**, 195 A.3d 610, 626 (Pa. Super. 2018) ("[W]hile there were some similarities between the prior bad acts testimony the Commonwealth seeks to

present at trial and [the a]ppellee's behavior toward the [v]ictim, the proffered testimony does not establish a motive for the murder of the [v]ictim.").[2]

Next, absence of mistake is not relevant to this case. In comparison, consider **Commonwealth v. Gilliam**, 249 A.3d 257 (Pa. Super. 2021). In that case, the defendant, a masseuse, was on trial for sexually touching two female clients during massages. The Commonwealth was permitted to call four additional clients who testified that the defendant similarly exceeded the bounds of a normal massage. While the victims did not share an identical profile, the pattern of abuse was similar:

> [W]ith each client, [the defendant] eventually deviated from the usual professional massages and worked his way further up the leg until he touched their vaginas. Although the complaints were made by women of different ages and races, all complaints were filed by female clients and they all involved at least one professional and appropriate massage before [the defendant] worked his way up the leg too far. The court finds these situations are substantially similar such that they may indicate a common plan and/or lack of mistake.

*Id.* at 273 (citation omitted).

The potential "mistake" in that case was that the defendant inadvertently touched the victim's vagina during an otherwise normal massage. Proof that the defendant touched several other women's vaginas during their massages would be relevant to show that the conduct was not

---

[2] The only real link between the incidents is that Y.C.'s allegations were apparently prompted by the investigation into K.R.'s allegations. If Appellant had made that aspect relevant in a case limited to the charges against Y.C., *e.g.*, by suggesting that Y.C. was not credible due to delayed reporting, then perhaps that would "open the door" to evidence about K.R.

accidental and thus had a non-propensity purpose. Here, nothing about these incidents suggested that Appellant's behavior could plausibly be perceived as "accidental" as he obviously had no legitimate reason for touching these victims. *See Commonwealth v. Ross*, 57 A.3d 85, 101 (Pa. Super. 2012) (holding that trial court erred in allowing bad acts testimony from other women whom the defendant had abused in trial of first-degree murder as relevant to motive and/or intent; "We disagree that intent was at issue here. … Given the circumstances surrounding Miller's murder, including the mutilation of the body, the use of duct tape, and the bite mark on her breast, there can be no question that this was an intentional killing.").

That leaves the Commonwealth's reference to "common plan or scheme."[3] As we recently stated in the unpublished memorandum decision *Commonwealth v. Cope*, 2023 WL 5321091, at *4 (Pa. Super. filed Aug. 18, 2023), "[t]he degree of similarity required when admitting evidence of other acts that are similar to the crimes alleged is a difficult question."[4] To the extent that the "common plan" exception encompasses similarities that fall short of a "virtual signature," we conclude that the commonalities of these crimes are so minimal that they cannot qualify as a "common plan."

---

[3] This exception to Rule 404(b) is often described as "common plan, scheme, or design." For ease of reference, we will use the phrase "common plan."

[4] Rule of Appellate Procedure 126(b)(1) states that non-precedential memorandum decisions from the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

To illustrate, in **Commonwealth v. Patterson**, 399 A.2d 123 (Pa. 1979), the Commonwealth prosecuted Patterson for rape. The victim had been raped at approximately 2:30 a.m. near 47th Street in Philadelphia. The victim testified that a man "grabbed her by the mouth with his left hand and held an ice pick to her throat. He said: '... don't scream,' and asked how much money she had. She responded: 'five dollars,' and he then walked her through an alley and into a garage." **Id.** at 125 (ellipsis in original). The man then "raped her, choked her until she blacked out, stole the five dollars from her, and tied her hands before leaving the garage." **Id.** The trial court permitted the Commonwealth to introduce the testimony of another woman who had also been raped near 47th Street at approximately 2:30 a.m. about five days later, for purposes of establishing identity. This victim testified that a man, whom she identified as Patterson, told her, "[d]on't scream," and forced her at gunpoint to an alley. **Id.** at 126. The victim asked to be taken to a hotel, hoping to find help along the way. The man then took her to his apartment, where he raped her.

Our Supreme Court held that a new trial was required, on the basis that the incidents were so dissimilar that no "logical connection" was present. **Id.** at 127. The victims were of different ages, the weapons were not identical, and the first rape involved a robbery, choking, and tying up the victim whereas the second did not. Even when measured against the similar location and offense times, the dissimilarities between the incidents required excluding the testimony. **See id.** at 127 ("Because of the dissimilarities, we are not

- 14 -

persuaded a nearly identical method or a common scheme, plan, or design was established.").

The similarities in this case are far weaker than those in ***Patterson***. The only real similarity cited by the Commonwealth is that each victim was the daughter of Appellant's girlfriend.[5] In all other respects, the incidents differ. First, the victims were of quite different ages, which is a relevant factor. ***See id.*** (noting that the victims were of totally different ages); ***Commonwealth v. Fortune***, 346 A.2d 783, 787 (Pa. 1975) ("The victim … was older and larger than the 'little boys' or little kids' who were the victims of the other incidents."). K.R. was three or four years old when Appellant began his years-long sexual abuse, whereas Y.C. was a teenager and testified that only one act of abuse occurred.

Different "methods" of abuse were also involved. On this point, our decision in ***Commonwealth v. Luktisch***, 680 A.2d 877 (Pa. Super. 1996), which involved sexual crimes against children, is instructive. The defendant was on trial for raping his eleven-year-old stepdaughter, and the trial court permitted the Commonwealth to introduce other act evidence from the defendant's biological daughter. That witness was 29 years old at the time of her testimony, but was between 5 and 8 when the abuse started. The defendant's claim on appeal was limited to the remoteness issue. We stated

_____

[5] The Commonwealth, like the trial court, also offers that Appellant identically "groomed" both victims. As explained *infra*, this conclusion does not withstand scrutiny.

- 15 -

that the relevance of how much time has passed is "inversely proportional to the similarity of the crimes in question." **Id.** at 879 (quoting **Commonwealth v. Miller**, 664 A.2d 1310, 1319 (Pa. 1995)). We determined that the abuse against all the victims was "nearly identical." **Id.** The "acts committed … were strikingly similar. The three victims[6] were near the same age when [the defendant] molested them; they all had the relationship of daughter or stepdaughter to [the defendant]; all three were living with [the defendant] when the acts occurred; and the nature of the acts were almost identical." **Id.** (citation omitted). With respect to the "nature of the acts," the trial court opinion noted that the "progression … was similar; improper touching first, then oral sex, then sexual intercourse." **Id.** (citation omitted). We agreed that "the pattern of molestation committed upon [the defendant's] young victims was so distinct" as to justify its admission. **Id**.

As we discussed in **Cope**, whether a "common plan" theory of admission requires a high degree of similarity is an issue that is arguably in a state of flux in this Commonwealth. **See generally Cope**, 2023 WL 5321091, at *5-6*. In any event, the only real similarity in these crimes is the victim being the daughter of Appellant's girlfriend, which is more akin to an insignificant detail common to many offenders who sexually abuse their victims. In fact, the Commonwealth essentially concedes that the method and patterns of abuse were not identical by arguing that the incidents *would have* progressed beyond

---

[6] A second stepdaughter also testified against the defendant.

- 16 -

fondling had Y.C. not left the home. Setting aside the fact that this hypothetical pattern of abuse would still be quite dissimilar given the victims' ages, the fact remains that no similar "pattern of molestation" occurred in this case. There is very little commonality between the two sets of crimes beyond the fact that Appellant targeted his girlfriends' daughters. That fact alone cannot suffice to establish a common plan. In **Commonwealth v. Cosby**, 224 A.3d 372 (Pa. Super. 2019), *vacated on other grounds,* 252 A.3d 1092 (Pa. 2021), we agreed that "a criminal 'plan' may be analogized to a script or playbook of criminal tactics that worked for the offender when committing past crimes." **Id.** at 402 (citation omitted). We observed that "[i]t is the pattern itself, and not the mere presence of some inconsistencies between the various assaults, that determines admissibility under these exceptions." **Id.**

There is no "script or playbook" in this case beyond the fact that Appellant abused girls to whom he had access by virtue of dating their mothers. That is, in our view, a rather insignificant detail that is not specific enough to Appellant's own patterns or conduct. "[A] court must necessarily look for similarities in a number of factors when comparing the methods and circumstances of other crimes sought to be introduced through Rule 404(b)…. Similarities cannot be confined to insignificant details that would likely be common elements regardless of the individual committing the crime." **Commonwealth v. Bidwell**, 195 A.3d 610, 618–19 (Pa. Super. 2018) (citation omitted).

Having rejected the Commonwealth's cited theories of admissibility, and finding that no other recognized Rule 404(b) exception would permit the admission of this evidence, we conclude that the trial court erred by failing to grant severance.

**(ii)**

The error does not warrant a new trial

We now turn to the effect of the error. We conclude that this poses a close call, especially given the role of credibility in these types of cases. ***Commonwealth v. McDonough***, 96 A.3d 1067, 1069 (Pa. Super. 2014) ("The uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant.") (citation omitted). Thus, we agree with Appellant that there is a risk that the jury was persuaded that Y.C.'s testimony bolstered the credibility of K.R. However, we ultimately agree with the Commonwealth that the error was harmless beyond a reasonable doubt, based primarily on the fact that the jury acquitted Appellant of all charges involving Y.C.

Briefly, we note that we view this error as involving the Commonwealth's burden to establish that the error was not harmless beyond a reasonable doubt. The Commonwealth's brief claims that Appellant failed to show prejudice by virtue of the jury's acquittal, suggesting that Appellant bears the burden on appeal. We disagree. A showing of prejudice is simply one of the three factors a trial court must consider when faced with a request to sever. When a defendant moves for severance of charges "not based on the same

act or transaction, the court must determine whether [1] evidence of the distinct offenses would be admissible in a separate trial for the other; [2] whether such evidence can easily be separated by the jury so as to avoid confusion; and [3] whether the defendant will be unduly prejudiced by the consolidation." ***Commonwealth v. Newman***, 598 A.2d 275, 278 (Pa. 1991). Here, the trial court erred at the first step per our Rule 404(b) analysis. Thus, Appellant was not required to show that he was prejudiced by the consolidation with respect to whether the initial ruling was erroneous.

The question thus becomes whether the error automatically entitles Appellant to relief. We have not discovered a case directly on point in Pennsylvania, but federal law holds that the harmless error doctrine applies when cases are erroneously tried together. The United States Court of Appeals for the Fourth Circuit summarizes the law as follows:

> If the initial joinder was not proper, … we review this non[-]constitutional error for harmlessness, and reverse unless the misjoinder resulted in no "actual prejudice" to the defendants "because it had [no] substantial and injurious effect or influence in determining the jury's verdict." [***United States v.***] ***Lane***, 474 U.S. [438,] 449 … [(1986)] (internal quotation marks omitted). The Government, of course, bears the burden of showing that the error was harmless.

***United States v. Mackins***, 315 F.3d 399, 412 (4th Cir. 2003) (footnote omitted; first bracketing in original). In the cited ***Lane*** case, the United States Supreme Court rejected the argument that misjoinder is prejudicial *per se*, in part because the case "for applying harmless-error analysis is even stronger because the specific joinder standards of [federal Rule of Criminal Procedure

8] are not themselves of constitutional magnitude." *Lane*, 474 U.S. at 446. We agree that this approach is appropriate, and we apply the same standard for harmless-error analysis regardless of whether the error was constitutional or not. *Commonwealth v. Story*, 383 A.2d 155, 162 (Pa. 1978). Furthermore, our Supreme Court affirmed in *Commonwealth v. Hamlett*, 234 A.3d 486, 488 (Pa. 2020), that this Court may invoke harmless error *sua sponte*.

Presently, the Commonwealth has cited the jury's acquittal of all counts concerning Y.C. as the basis for finding no prejudice. However, the Commonwealth has mistakenly concluded that Appellant bore the burden to show that he was prejudiced. We thus make clear that, while we agree with the Commonwealth's specific reasons for why Appellant was not prejudiced, we view those claims through the harmless-error framework, which requires that the Commonwealth establish that the error be deemed harmless beyond a reasonable doubt:

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hairston*, 84 A.3d 657, 671–72 (Pa. 2014) (citations omitted).

The fact that credibility is paramount in sexual abuse cases renders it virtually impossible for this Court to state that the evidence of guilt was so overwhelming, as this would entail an evaluation of K.R.'s credibility. Nor was the respective testimony cumulative. That leaves the first variety of harmless error. We agree with the Commonwealth that the jury's acquittal of all charges showed, in terms of the severance inquiry, that the jury compartmentalized the charges, which in turn establishes the lack of prejudice. In the related context of assessing the impact of erroneously admitted evidence, if that evidence was relevant only to certain charges and the jury acquits on those charges, then the error was harmless:

> The doctrine of "harmless error" is a technique of appellate review designed to advance judicial economy by obviating the necessity for retrial where the appellate court is convinced that the trial error was harmless beyond a reasonable doubt, and its purpose is premised upon the well-established proposition that the defendant is entitled to a fair trial but not a perfect one. The burden of establishing that error was harmless beyond a reasonable doubt rests with the Commonwealth. Error is harmless if the Commonwealth has proven beyond a reasonable doubt that there is no reasonable probability that the error contributed to the verdict.
>
> An error in the admission or exclusion of evidence requires a reversal unless the Commonwealth establishes that the error was harmless beyond a reasonable doubt. However, where the evidence which was improperly admitted or excluded is relevant only to charges of which defendant was ultimately acquitted[,] any error in admitting or excluding such evidence is harmless.

*Commonwealth v. Wood*, 637 A.2d 1335, 1351 (Pa. Super. 1994) (citations omitted).

Similarly, the fact that the jury acquitted Appellant of the charges concerning Y.C. suggests that the error was harmless beyond a reasonable doubt. Appellant's point that the jury may have considered Y.C.'s testimony in weighing K.R.'s testimony is a strong one, and **Wood** is addressing erroneously-admitted evidence pertinent to specific charges and does not necessarily address "spill over" prejudice of this kind. We conclude that this presents a close call but are ultimately persuaded that the error was harmless beyond a reasonable doubt.

Logically, a conclusion that Appellant had a propensity for sexually abusing young women would lead the jury to find Appellant guilty of all counts. This is not an iron-clad proposition, as it is well-settled that inconsistent verdicts are permitted because it is the jury's "sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." **Commonwealth v. Miller**, 657 A.2d 946, 948 (Pa. Super. 1995) (citation omitted). But, here, the jury did not return *inconsistent* verdicts. The jury rejected Y.C.'s testimony in total by finding Appellant not guilty of both charges, which indicates that the jury did not believe Y.C.'s testimony, and that it also did not allow its assessment of K.R.'s testimony to color its consideration of the charges specific to Y.C. An inconsistent verdict issue arises when the jury's verdict cannot be legally squared. **See, e.g.**, **Commonwealth v. Peer**, 684 A.2d 1077, 1081 (Pa. Super. 1996) (determining that the jury's acquittal of lesser included offense did not preclude conviction of the greater offense). Here, the jury's verdict is logically

and legally consistent, as it indicates that the jury simply did not believe Y.C.'s testimony whereas it believed K.R.[7]

In this regard, the jury's acquittal arguably provided Appellant with greater protections than a typical Rule 404(b) scenario, where the jury may or may not be informed that a defendant has been previously convicted of some crime. In **Patterson**, **supra**, our Supreme Court ordered a new trial due to the trial court's allowing the Commonwealth to introduce evidence of a subsequent rape. There, however, Patterson was not jointly prosecuted for the crime, and the jury was apparently not informed that he had been convicted of the crime, as the Court's opinion indicates only that she identified Patterson as her attacker.[8] This is not uncommon, as jurors are typically instructed that Rule 404(b) evidence may not be used as substantive evidence of guilt. In this case, the "Rule 404(b) evidence" was submitted to the jury in the form of actual criminal charges. Thus, the jury was specifically asked to

---

[7] We conclude that Y.C.'s testimony, if credited by the jury, would have sufficed to establish the elements of at least one of the two charges. Appellant was charged with one count of indecent assault, 18 Pa.C.S. § 3126(a)(8), which criminalizes "indecent contact … for the purpose of arousing sexual desire in the person or the complainant and … the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person," CITE? and Y.C. testified that Appellant touched her breasts and played with her nipples with his fingers.

[8] The dissenting opinion by Judge Hoffman in the Superior Court noted that Patterson had pleaded guilty to that rape. **Commonwealth v. Patterson**, 372 A.2d 7, 9 (Pa. Super. 1977) (Hoffman, J., dissenting), *rev'd*, 399 A.2d 123 (Pa. 1979).

render its judgment on whether a crime occurred. Its acquittal indicates that the jury simply did not believe Y.C. at all. The common law prohibition against introducing other act evidence, as previously quoted, states that "[i]t is not proper to raise a presumption of guilt, on the ground, that having committed one crime, the depravity it exhibits makes it likely he would commit another." *Shaffner*, 72 Pa. at 65. The charges should not have been tried together because, had the jury believed Y.C., they would apply a propensity rationale and presume that Appellant must have committed the acts against K.R. But this situation is atypical as the jury was not told that Appellant had committed a crime, but rather asked to render judgment on whether he did with respect to both victims. By acquitting Appellant of the Y.C. allegations, the jury concluded that no crime occurred regarding her testimony. The *Wood* Court remarked that "where the evidence which was improperly admitted or excluded is relevant only to charges of which defendant was ultimately acquitted any error in admitting or excluding such evidence is harmless," which reflects confidence in assessing the effect of the jury's acquittal. *Wood*, *supra* at 1351. It could always be said that erroneously admitted evidence could have some collateral effect in the jurors' mind. In this regard, the inability to definitively conclude that the jury returned a not guilty verdict due to disbelief of Y.C.'s testimony must be considered alongside the equally well-established principle that "[j]uries are presumed to follow a court's instructions." *Commonwealth v. Naranjo*, 53 A.3d 66, 71 (Pa. Super. 2012). The jury was instructed that it may only find guilt beyond a reasonable

doubt, and we must presume that the jury would not have deemed Y.C. not credible, then simultaneously used her discredited testimony in rendering judgment on the K.R. allegations.

We are concerned with the trial court's conclusion that the Commonwealth may have used the stronger case against K.R. to "bootstrap" the weaker case concerning Y.C. If that were the Commonwealth's intent, that is obviously entirely improper. To reiterate, we agree that this is a close call[9] as the jury's verdict is the critical facet of our harmless-error analysis. The verdicts indicate that the jury separated the charges and returned not guilty verdicts with respect to Y.C., and we presume that the jury would not then credit her testimony for purposes of convicting Appellant with respect to K.R. Similarly, we are confident that the jury faithfully applied the law by not finding Appellant guilty of the Y.C. charges based on the fact it clearly credited K.R.'s testimony. We therefore conclude that the Commonwealth has

_____

[9] We briefly note that in *Weaver v. Massachusetts*, 582 U.S. 286 (2017), the United States Supreme Court addressed whether constitutional structural errors always entitle a defendant to a new trial on collateral review without a showing of prejudice. The joinder error here is viewed as non-constitutional and the issue arises on direct appeal, but the case speaks to Appellant's argument that the effect of the error here is essentially impossible to determine. *Id.* at 295 (explaining that some errors are deemed structural because "the precise effect of the violation cannot be ascertained") (quotation marks and citation omitted). We are also cognizant of the differences in opinion amongst the Justices of our Supreme Court concerning the ability of an appellate court to assess whether an error was harmless when credibility is at issue, as reflected in the various opinions issued in *Commonwealth v. Raboin*, 258 A.3d 412 (Pa. 2021).

established that the error was harmless beyond a reasonable doubt, as the error in consolidating the cases did not prejudice Appellant.

## II.

## Weight of the evidence

Appellant's remaining issue raises sundry claims against the weight of the evidence supporting the verdicts against K.R., all of which generally poke holes in aspects of K.R.'s testimony. Appellant highlights that K.R.'s testimony differed from prior statements in that her jury testimony added details that she did not disclose in prior statements to forensic interviewers. For instance, K.R. testified at a preliminary hearing that Appellant inserted the vibrator into her vagina while, at trial, she agreed that, prior to the preliminary hearing, she had said that Appellant only ever inserted his fingers and penis. Appellant also submits that it is completely unbelievable that K.R. would recall being taken from her crib at the age of three, and that her testimony that Appellant beat her on several occasions without leaving marks was not credible, as K.R.'s mother would have observed those signs of physical abuse.

Appellant's argument asks this Court to weigh K.R.'s credibility, which we may not do. Our Supreme Court has established the parameters of appellate review as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an

appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 409 (Pa. 2003) (citations omitted). The primary focus of a weight challenge is whether "the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citation omitted).

Because we view the trial court's exercise of discretion and not the underlying question of whether the weight of the evidence supports the verdicts, we quote the trial court's analysis rejecting Appellant's claim:

> The victim testified about the various acts of sexual contact between herself and [Appellant]. She testified that[,] when she was six or seven years old[, Appellant] placed a silver vibrator with a black button between her labia. … K.R. testified that [Appellant] would pin her down and sometimes she would have bruises on her legs and arms; that her mother noticed but was told that she was just playing outside with her brother. K.R. was cross[-]examined on the fact that she did not mention any incidents with the vibrator, []or that [Appellant] had her touch him, during her interview at the Children's Alliance Center. K.R. was further cross[-]examined as to her inconsistency in her statements as to whether she had been slapped, choked, hit with a belt, and pushed to the floor, all of which were reported to the Children's Alliance Center but not part of her trial testimony. The mother of K.R., [M.R.], testified that she didn't see any bruises but that sometimes K.R. would roughhouse with the boys because she has older brothers. She immediately qualified that with "but not things to be concerned about" and "like a normal child." She also said she never noticed any unusual bruises and nothing on her neck, nor belt marks. She testified that she didn't have concerns that [Appellant] was hitting K.R. because "he favored her." She testified that K.R. would cry in the bath. The jury as finder of fact is free to believe all, none, or some of the evidence. The jury was instructed on credibility of witnesses generally, as

well as given False In One, False In All and Failure to Make Prompt Complaint.

Credibility determinations are made by [the] finder of fact and challenges to those determinations go to weight, not sufficiency of evidence. The jury was free to accept or reject the various arguments put forth by the Commonwealth and the Defense in this case. For example, the testimony of the use of the vibrator, if believed, could support the required element needed for involuntary deviate sexual intercourse — a charge where a not guilty verdict was rendered.

After reviewing the record, the verdict of the jury, while disappointing to [Appellant], does not come as a shock to this [c]ourt. In light of K.R. at the time of the victimization being under ten years old, and at times as young as three years old, variations in the testimony during multiple interviews to different persons would not be unexpected. The evidence presented at trial was not contrary to the verdicts of the jury. The jury made factual findings and rendered verdicts of guilty as to some charges and not guilty to others, showing their careful assessment of the evidence presented. This issue has no merit.

TCO at 6-7.

We find no abuse of discretion in this analysis. The trial court had the institutional advantage of observing the testimony firsthand and its conscience was not shocked by the verdict. *See Commonwealth. v. Brown*, 648 A.2d 1177, 1190 (Pa. 1994) ("[A]n appellate court's review rests solely upon a cold record. Because of this disparity in vantage points[,] an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge."). The trial court carefully considered Appellant's arguments assailing the weight of the evidence and found no merit to the complaint. We find no abuse of discretion in its determination, and we therefore must reject Appellant's point of error.

Judgment of sentence affirmed.

- 28 -

President Judge Emeritus Stevens joins this memorandum.

Judge Lazarus files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/06/2023